## No. 11,504.

WIDOW CHARLES ROUYER ET ALS. VS. CHARLES CARROLL.

The only test of the paraphernality of the title of a married woman, during the existence of the community, is to be found in proof of the existence, origin and investment of her paraphernal funds under her separate administration and control.

The Code declares that when paraphernal property is administered by the husband, the fruits thereof, whether natural, civil, or the result of labor, belong to the community; and the converse of that proposition is true when it is administered by the wife.

The husband's failure to authorize the wife's signature to an act of sale to her is a relative nullity that can only be availed of in a direct action brought by the husband, or his heirs; and, in case of sales at public auction, it is prescribed by the lapse of five years from the time the act is passed. And such unauthorized contract may be validated, after the marriage has been disolved, by either express or implied ratification.

An act under private signature, acknowledged, or legally held to be acknowledged, has, between those who have subscribed it and their heirs and assigns, the same credit as an authentic act.

APPEAL from the Civil District Court for the Parish of Orleans.
*King, J.*

---

*A. L. Tissot* and *E. J. Méral* for Plaintiffs, Appellees, cite: 35 An. 570; 42 An. 357; C. C., Arts. 2386, 2402; 33 An. 160; 45 An. 833; 4 R. 205; 7 M. 406; 37 An. 419; 38 An. 209; 27 An. 597; 39 An. 1050; 41 An. 937; 38 An. 836.

---

*Carroll & Carroll* for Defendant and Appellant:

No one can be compelled to accept title to property which was purchased in the name of the wife during the marriage, without the husband's sanction, and subsequently sold by her, alleging the husband to be dead and the property to be her separate estate, unless there be conclusive proof, both of the death and of the fact that the property was really separate property.

Conceding the husband to be dead, which is not shown, proof that the property is separate property can not be made in proceedings to compel a third party to accept title, but must have been previously made contradictorily with the heirs of the husband. 35 An. 570.

The rights of husband, if living, or of his heirs, if he be dead, are apparent on the record, and there is no pretence of any decree against them. The defendant should not be compelled to take title, when the rights of others, apparent on the face of the title, have not been determined. 41 An. 481.

In this case the husband has never dec ared the property to be separate, but even if he had so declared, his statement would have no effect against creditors or forced heirs. 35 An. 570; 42 An. 357. If the husband were really dead as pretended, he left a forced heir, his father, as well as a brother and several sisters.

A good title must be offered prior to the institution of the act. The vendor can not eke out his title in an action to compel another to accept that title. 44 An. 1032.

The property in question is, on the face of the papers, community property. C. C. 2402; 29 An. 520; 39 An. 785; 35 An. 296.

49

There can be no reckoning between the spouses *inter se,* as to the *quantum* of labor bestowed.    39 An. 411.

The produce of the industry of the wife falls into community.    35 An. 157.

The earnings of a married woman, in keeping a boarding house during the community, fall into the community.    33 An. 595.

The earnings of a wife's needle fall into the community. 30 An. 171.

Property purchased partly with community funds and partly with paraphernal funds of the wife, in the name of the wife, falls into community.    39 An. 377.

Property purchased during marriage in the name of the husband or wife is community property.    29 An. 520.

It is incumbent upon the wife to prove the paraphernality of the property.    Mere recitals in an act to that effect amount to no presumption in her favor.    39 An. 377.

The purchaser can not be forced to accept a " perilous " title.    41 An. 474; Lyman vs. Stroudback, 47 An. 71.

" It was incumbent on plaintiff under the law to tender a title free from all clouds or doubts, and his purchaser can not be coerced to accept a title suggestive of future litigation on the face of the papers."    40 An. 847; Lockhardt vs. Smith, 47 An. 121.

" One who has agreed to purchase real estate can not be forced to accept a. title which is not unquestionably good, and which is suggestive of litigation, the less so where parties who have rights are not parties to the suit, and would not be concluded by a judgment adverse to their ostensible or contingent rights. This is so more particularly in cases in which minors are concerned."    41 An. 1100.

The purchaser can not be coerced to accept a title which is, to say the least, most doubtful and clouded, and under which future litigation would be imminent.    He would be giving his money for property not transferable to him and practically buying a lawsuit.    See 41 An. 1104, and cases there cited.

The court erred in refusing to allow defendant to introduce instruments to prove *rem ipsam.*    41 An. 1109.

An act claimed to have been acknowledged before a Louisiana Commissioner acquires no authenticity unless executed in the presence of two witnesses.    39 An. 1050.

An act purporting to have been acknowledged before a United States Consul is not authentic where it does not appear that the acknowledgment was made in the presence of two competent witnesses.    C. C. 2234; 39 An. 1050.

The differences between the present case and Succession of Lewis are numerous and marked.

---

Argued and submitted January 15, 1895.

Decided February 25, 1895.

Rehearing refused April 22, 1895.

---

The opinion of the court was delivered by

WATKINS, J.    The object of this suit is to compel defendant to accept title to three lots of ground which, with their improvements, situated in the city of New Orleans, were adjudicated to him at public auction, in May, 1893—said defendant having declined to accept title on the ground that same was defective and insufficient.

The property in question consists of three lots of ground designated by the municipal numbers 2, 3 and 4 on Rampart street, and was adjudicated to the defendant for the sum and price of nineteen thousand dollars.

The answer of the defendant is a general denial, coupled with the following special defences, viz:

a. As to lot 2, it is averred that the property is held under title from Mrs. Barbara Feucht Rocker, alleged widow of Henry Rocker; that she purchased same during the lifetime of Henry Rocker, and that there is no evidence of his death.    But if he be dead, then this lot, having been bought during the marriage between Henry Rocker and wife, is part of the property held in community between them, and one undivided one-half interest therein belongs to his heirs; and on account of which title being in them, the alleged title made by Mrs. Rocker is fatally defective.

b. As to lot No. 3, it is averred that title comes through an alleged sale made under a power of attorney annexed to an act passed before J. F. Meunier, notary public, in June 1885, and there is no proof that the owner of the property signed and executed the procuration; and that on this account the title tendered is defective and not such as the law requires.

c. As to lot No. 4, it is averred that the title comes through an alleged sale made under a power of attorney annexed to an act passed before W. J. Castell, notary public, in January, 1877; that there is no proof that the owner of the property signed and executed the procuration, and that, on this account, the title tendered is defective and not such as the law requires.

During the trial the defendant also filed a plea of no cause of action.

Judgment was rendered in favor of plaintiffs and the defendant has appealed.

It sufficiently appears from the record that plaintiffs acquired title to the aforesaid property by inheritance and by sundry transfers from the widow of Bertrand Saloy, deceased. That Bertrand Saloy purchased from Barbara Feucht Rocker, who styles herself widow of her deceased husband, in an act passed March 2, 1886. In this act it is declared that the vendor, Barbara Feucht Rocker, acquired the property during the lifetime of her husband, from George R. Foster, by act dated April 29, 1876.

It is into the circumstances and history of *this* title we must look in order to determine the *paraphernality* of Mrs. Barbara Feucht Rocker's investment.

The general tenor of the evidence is that Bertrand Saloy first purchased lots Nos. 3 and 4, and had commenced to erect buildings thereon, when, after considerable negotiation, he consummated the purchase of lot No. 2. Some days later he caused the title to this last lot to be examined, retaining in his hands a portion of the price until Mrs. Rocker placed the matter in the hands of a lawyer for an examination of title.

It appears that in February of 1886, prior to the execution of the deed from Mrs. Rocker to Saloy, on March 2, she presented a petition to court in a judicial proceeding entitled "*In re* Barbara Feucht, praying to take testimony," etc , in which, amongst other things, she alleged, substantially, that her husband, Henry Rocker, died in 1882. That the lot in question, though bought during the marriage, was her own separate property, having been purchased with her paraphernal funds. That having been purchased with her paraphernal funds, she feared that the heirs of her deceased husband might thereafter bring suit against her, or her heirs, claiming it to be community property. That she desired to take the testi-

mony of herself and others, to be used as evidence in such suits as they might thereafter bring against her in this regard, *should said witnesses be dead or absent at the time.* The presumptive heirs were cited.

On this petition and order of court, the testimony of witnesses was taken in pursuance thereof, and on the faith of such order and the testimony thus taken Mr. Saloy accepted title from Mrs. Rocker without obtaining any formal decree compelling him to accept the same.

It appears from the record, that Henry Rocker and Barbara Feucht were married on the 6th of February, 1868, and that their marriage was a most unhappy one. That, on the 6th of May, 1868, the wife instituted suit for separation from bed and board and divorce; and, as a conservative measure, she prayed for and obtained an injunction restraining defendant *pendente lite* from interfering with her separate property.

The averment of her petition in this regard is, " that at the time of her marriage, and *before,* (she) was a public merchant keeping a grocery store at the corner of Perdido and Circus streets; and said grocery store and contents being petitioner's separate paraphernal property, she continued to carry on the business, and kept it separate and distinct in her own name, *after* marriage; but her said husband has constantly attempted to interfere with (her) separate administration of her said property and business, notwithstanding her objection thereto.

" That petitioner lives in the house No. 223 Customhouse street, which is her separate property, with all the movables therein, and where she is entitled to remain separate from her husband."

The injunction prohibited her husband from entering either of the aforesaid premises.

The husband defended the suit and filed an elaborate answer, and, among other things, he prayed for the dissolution of the injunction with damages.

He denied the separate ownership of the properties described because he had, out of *his* own separate moneys, expended one thousand dollars in repairs on the house No. 223 Customhouse street; and that during their marriage same had increased in value to the extènt of two thousand dollars, to one-half of which he was entitled. He also claimed two-thirds interest in the grocery store, valued at

one thousand eight hundred dollars, and one thousand dollars paid for furniture.

On the trial, all of these extravagant pretensions were abandoned by the defendant and judgment was pronounced in plaintiff's favor, decreeing that she be "maintained in the separate and exclusive ownership, possession and administration of the property described in her petition."

Considering that the marriage was solemnized on the 6th of February, and that that suit was filed on the 6th of May following, only three months intervening between marriage and suit for divorce, there can be no doubt of the property having been the *separate paraphernal* property of the wife, under her own administration and control.

*Eight years subsequently*, Barbara Feucht, personally purchased lot No. 2, that is to say on the 29th of April, 1876, as it is alleged, with her own separate means, under her administration and control, which were the fruits of her separate property and the result of her own labor, in its management and administration.

It seems to be satisfactorily shown that Henry Rocker was living at the time his wife purchased lot No. 2, but that he died in 1882, prior to her conveyance to Saloy in 1886.

The sale from George R. Foster to Barbara Feucht, of date April 26, 1876, was made at public auction, by C. E. Girardy, auctioneer, for the price of three thousand six hundred dollars; the act declaring that the property was adjudicated "unto Mrs. Barbara Feucht, residing in this city, present, purchasing and acknowledging due delivery and possession thereof."

During the progress of the trial of this suit, plaintiff's counsel offered in rebuttal the record entitled "*Barbara Feucht* praying to take testimony in *perpetuum memorium*," No. 16,805 of the docket of the court, with this statement, viz.:

"I desire to state that there are some witnesses whose testimony was given in this matter *who are not dead;* and we have brought them here, and tendered them, to have them examined in compliance with the Code of Practice. I therefore offer the whole record, including the testimony, for what it is worth." Code of Practice, 440.

The introduction of this record in evidence was objected to as being *res inter alios acta;* and that, in no event, can same be ad-

mitted in evidence as to paraphernality of the property "until after it shall have been established as such paraphernal property contradictorily with the forced heirs and creditors of Henry Rocker, if he be dead."

The court held that the objection was one going to the effect, and not to the admissibility of the evidence, overruled the objection and admitted the testimony.

We can see no objection to the ruling. The proceeding was judicial. The witnesses had been therein sworn, and their testimony had been reduced to writing, for the purpose of perpetuating it. The presumptive absent heirs of Henry Rocker were therein represented by a *curator ad hoc*. Some of those witnesses have since died. The question there related to a *possible* contest between these presumptive heirs of Henry Rocker and Barbara Feucht, his surviving widow, as to the paraphernal character of the latter's title to lot No. 2; and, championing their cause, the defendant has raised *that* question in this case. Therefore, the case stands in lieu of the litigation that was then anticipated.

The general rule, of ancient origin, is that in case a witness has died or "departed the realm" since his testimony was taken in some prior judicial proceeding, it may be introduced in evidence in a subsequent proceeding between the same parties.

"Testimony of a witness in a previous suit between the same parties for the same cause of action, where there has been an opportunity for cross-examination, may be used by either party if the witness be dead, or absent, or for other cause can not be produced. Hennen vs. Monro, 4 N. S. 449; Miller vs. Russell, 7 N. S. 267; Noble vs. Martin, 7 N. S. 283; Williams vs. Bethany, 1 La. 320; Lopez Heirs vs. Berghel, 15 La. 43; Conway vs. Erwin, 1 An. 391; 1 Hennen's Digest, p. 506, XI, 2.

"Complete mutuality or identity of all the parties is not necessary to admit testimony in a former suit. It generally suffices if the *issue* be the same, and the party against whom it is offered had full power of cross-examination." Clossman vs. Barbancey, 7 Robinson, 438; Union Bank vs. Jones, 4 An. 221; Taylor vs. Paterson, 9 An. 251; Code of Practice, 440.

From the proffered record it appears that the *curator ad hoc* was duly served with notice of the time and place of the taking of this

evidence, and that he appeared at the time and place indicated and cross-examined the witnesses.

All the requisites of the law seem to have been fulfilled.

No importance, however, attaches to this record, except that which attaches to *any* deposition. That was an *exceptional mode* of taking the testimony of witnesses, as a means of preserving and perpetuating it. Code of Practice, 440.

In this case Barbara Feucht was interrogated as a witness for plaintiff, and, in the course of her examination, circumstantially related her circumstances during a series of years anterior to her acquisition of the lot 2 from Foster. She enumerated the different pieces of real estate in the city of New Orleans she had from time to time acquired in her own right and with her own paraphernal means under her administration and control, producing and filing her titles in evidence. She particularly instances the two-story house No. 223 Customhouse street. She furnishes estimates of her revenues from her different properties and says that this Customhouse street property customarily rented for one hundred dollars per month during a series of years.

Being interrogated with reference to the purchase of lot No. 2 the following occurred, viz. :

" Q. What did you pay for this property, madam?

" A. Well, now, I don't know; it is twenty-six or thirty-six hundred dollars.

" Q. The title says thirty-six hundred dollars?

" A. Yes, sir; the title shows that. Yes, sir; that is right.

" Q. With what money did you pay for that?

" A. With money that I saved from other pieces of property, and my own industries."

To the cross-examination of defendant's counsel, she says the source from which she derived the means with which to make the purchase was " from saving rents, and also from pieces of property and my own work—my own industries.

" Q. From the revenues of your real estate?

" A. Yes, sir."

This witness was very carefully and critically cross-examined, and questioned as to all her different sources of revenue—rents, as well as of her industries, without obtaining any different result, practically. And there is no contrary statement in the record.

Henry Rocker seems to have wholly disappeared after the institution of the second divorce suit against him in 1869, and it is satisfactorily shown by the testimony that he died in St. Louis, Mo., in 1882. Indeed, the defendant's answer, while alleging that he was not dead at the time of the sale to Saloy in March, 1886, admits "that he has lately been informed, and avers upon belief, that Henry Rocker has lately departed this life," etc.

Certainly he has not lived with Barbara Feucht as her husband since the last suit was filed, and that he had neither administration of nor control over *any* of her properties or revenues, all of which belong to her separate estate, and were free from his dominion altogether.

Bachino vs. Coste, 35 An. 570, was, like this, a suit to compel defendant to accept title derived through a title to a married woman, the *recitals* of which disclosed the origin of the funds with which the acquisition was made. But on the trial *no evidence was offered to show the truth of those recitals.*

The court say:

"Where property has that character"—that is the character of community property—"the burden rests on the wife or husband who claims it as *separate* estate, to establish ownership by positive evidence *dehors* the recitals of the act, which alone prove little or nothing. This is done by proving not only the existence, the origin of the funds, *provenance des derniers*, but also the actual investment of the same. This is required whether claim be raised as against creditors, heirs or any one else. Banks vs. Trudeau, 2 N. S. 39; Gonor vs. Her Husband, 11 Robinson, 528; Bass vs. Larche, 7 An. 104; Succession of Pinard vs. Holsen, 30 An. 169; Sentmenat vs. Soulé, 33 An. 612."

Then the court, in the concluding part of the opinion, announced, in other words, the same proposition, thus:

"Where, however, she has invested funds truly paraphernal, during marriage, in a piece of real estate, and she offers to sell it and her offer is accepted, it would be impossible for her to *prove* her title on the *face* of the act. She would be necessarily driven to extraneous proof, written or oral, or both, as the case may be, *but the purchaser who has agreed to buy must submit to that sort of evidence.*"

The *converse* of the Bachino case is stated in Duruty vs. Mus-

sácchia, 42 An. 357, a married woman having made sale of a piece of property of which she claimed the paraphernal ownership, the title to which was declined. The court say: "It is not disputed that the proof administered by Mrs. Duruty clearly and conclusively established every fact essential to maintain the paraphernality of her title and her full right to sell," etc. And the defendant was compelled to accept the title tendered to him.

The proof in this case fulfils all of the requisites of those cases.

The foregoing cases are cited on both sides, and the defendant also cites Succession of Coste, 43 An. 146, which announces nothing to the contrary.

Counsel for defendant refers us to the following evidence as furnishing conclusive proof of the property being community, viz.:

" By Mr. Meral:

"Q. I see by the deed of sale to you, Mrs. Rocker, the sale from Foster to you, that you paid for the property known as the Saloy property three thousand six hundred dollars?

" A. Yes, sir.

" Q. You paid one thousand two hundred dollars cash?

" A. Yes, sir.

" Q. And for the balance you gave two notes for one thousand two hundred dollars each, payable in one and two years after date?

" A. Yes, sir.

" Q. Who paid those notes?

" A. Myself, sir.

" Q. From what source did you pay them?

" A. From saving rents and also from pieces of property and my own work, my own industries.

" Q. From the revenues of your real estate?

" A. Yes, sir."

This is the same testimony that we have quoted above. It is of no consequence that Mrs. Rocker purchased the property partly upon terms of credit, as she evidently possessed sufficient means to discharge the deferred instalments, and in fact did pay them when they matured.

In respect to the portion of the money she derived from her " own work" and her " own industries," the defendant's counsel's contention is that it was an asset of the community and consecrated the acquisition to the community. But the Code declares:

" When the paraphernal property is administered by the husband, or by him and the wife indifferently, the *fruits of this property, whether natural, civil, or the result of labor, belong to the conjugal partnership, if there exists a community.*" Revised Civil Code, 2386.

The. *converse* of that proposition is equally true, when the paraphernal property is *administered by the wife.*

The proof shows clearly that *all* the property Mrs. Rocker possessed, antecedent to her acquisition of lot No. 2, was *separate* property which she owned *at and before marriage.*

It is of no consequence that she leased her houses by the month or year, or that she sometimes leased rooms, as she owned both the houses and the furniture.

Our attention is attracted to the fact that the deed from Mrs. Rocker to Saloy was not authorized by her husband, but it was executed in 1886, after his death. Similar objection is made to the deed she obtained from Foster in 1876: but that deed was made nearly twenty years ago, and it has passed unchallenged since. If the failure of the husband to authorize that act is a badge of nullity at all, it is a relative nullity that must be revoked by suit, and such a suit can only be brought by the husband or his heirs. Revised Civil Code, 134.

Surely neither the husband nor his heirs would have any interest in asserting the nullity of the title, and thus deprive themselves of at least their community half of it. Besides, such an action has long since prescribed; for the Code provides that *" all formalities* connected or growing out of any *public sale,* made by any person authorized at public auction, shall be prescribed by any one claiming under such sale, after the lapse of five years from the time of making it, whether against minors, married women or interdicted persons." Revised Civil Code, 3543.

The Code also provides that " the *unauthorized* contracts made by married women, like the acts of minors, may be made valid *after the marriage is dissolved,* either by express or *implied ratification.*" Revised Civil Code, 1786.

As to what are " public sales " see Revised Civil Code, 2261 *et seq.*

In respect to lot No. 2, we are of opinion the judgment of the court *a qua* is correct.

As to lot No. 3, the proof furnished by the record shows that Mrs. Saloy purchased from the Widow H. Hopkins and others, on the 8th

of June, 1885; and that among the alleged vendors was Mrs. Cora M. Hopkins, widow of Charles H. Pandorf, who was declared to be represented by George W. Hopkins, under an alleged power of attorney annexed to the act, which is an act under private signature, without proof of the signatures thereto.

But the act of sale in question is authentic in form, and it contains this recital, viz.:

"George W. Hopkins, herein acting in his own name as the duly constituted agent and attorney in fact of Mrs. Marie Cora Hopkins, widow of the late Charles H. Pandorf, a resident of the city of Bremen, Germany, by virtue of a power of attorney under private signature, executed on the 29th of October, 1883, duly acknowledged before John M. Wilson, United States Consul at Bremen, Germany, and hereto annexed for reference," etc.

That declaration constitutes an adequate authentication; for in Succession of Lehmann, 41 An. 988, we held that an act of procuration under private signature becomes authenticated when annexed to an authentic act and therein particularly described.

In Snow vs. Trotter, 3 An. 268, a case is presented of a defendant resisting an executory proceeding on the ground that "the power of attorney under which the plaintiff's agent acted was (not) in authentic form," and the court say:

"In the act of mortgage on which the order of seizure and sale was granted, the defendants had recognized the agent's capacity; and the mandate under which he acted is specially recited."

These decisions are the legitimate outcome of the provisions of our Code, for they declare:

"An act under private signature, acknowledged by the party against whom it is adduced, *or legally held to be acknowledged,* has, between those who have subscribed it, *and their heirs and assigns, the same credit as an authentic act.*" Revised Civil Code, 2242.

In Blach vs. Young, 23 An. 272, it was held that "the acceptance of a contract need not be expressed in it, nor is it indispensable that the act be signed by the party in whose favor it is made."

As to lot No. 4, the proof furnished by the record shows that Mrs. Saloy acquired title from Widow A. M. Buchanan and others, under an act dated September 17, 1885; and that amongst the vendors named in the act was Philip Buchanan, who owned part interest in the lot, by purchase from Mrs. Anna E. Jones, under an act dated

January 26, 1877—she being therein represented by Joseph Magioni, as agent, under an alleged power of attorney bearing date December 16, 1876, and annexed to the act of sale.

The aforesaid act of sale was authentic in form, and it sets out a description of the act of procuration similar in all respects to that in the deed to lot No. 3—hence same is, for like reasons, a sufficient authentication.

There are several rulings of the District Judge to which our attention has been attracted, upon which counsel for the defendant have requested an expression of an opinion by this court.   But we find it unnecessary to do so, in view of the fact that our investigation of the cause has satisfied our minds that the title tendered the defendant is good and sufficient.   For the same reason we find it unnecessary to take notice of an agreement that is appended to the transcript.

Judgment affirmed.