O’NIELL, Chief Justice.
 

 H. H. Addison, a resident of St. Helena Parish, died intestate in 1900, survived by
 
 *426
 
 the widow in community, Martha Jane Addison, and five sons, namely, W. H. Addison, Amos Addison, R. R. Addison, H. Kirby Addison, and Hosea Lea Addison. The estate of the decedent consisted of a tract of land of about 400 acres, which was his separate property, and two tracts of land comprising about 292 acres, which were community property.
 

 In 1918, Amos Addison, one of the five children, died intestate, leaving as his heirs at law his mother and four brothers. The mother then bought the undivided interests in the .three tracts of land of two of her sons, na.mely, -Hosea Lea Addison and R. R. Addison. Thereafter, R. R. Addison also died intestate, leaving several children who are among the plaintiffs in this suit.
 

 H. Kirby Addison, the defendant in this suit, never married, but remained on the farm with his mother, aiding her in the cultivation of the place, and in a general way attending to her personal and business affairs, in her declining years. In 1931, Mrs. Addison, fearing that her finances might be affected adversely by the failure of a bank at Osyka, made a simulated transfer of her interest in the real estate above mentioned, and in litigation here, to H. Kirby Addison. The deed was properly recorded, but at the same time H. Kirby Addison executed in favor of his mother a counter letter which recited that the transfer was for business reasons only and was not intended as a transfer of the property. Mrs. Addison kept the counter letter in her possession, unrecorded, until the time of her death, in 1936. On her deathbed she gave it to H. Kirby Addison.
 

 After Mrs. Addison’s death, H. Kirby Addison remained in undisturbed possession of the farm. But, in 1937, one of the grandchildren of Mrs. Addison, while visiting on the farm found the counter letter and gay? it to her mother, who had it recorded. Thereafter, in 1939, H. Kirby Addison, on the advice of an attorney, R. T. Carter, recorded an instrument which he claimed was executed by Mrs. Addison on Janu'ary 23, 1933, purporting to transfer to him, H. Kirby Addison, her undivided interest in all of the real estate above mentioned, and all of her “household goods and personal property”, for a cash consideration of $2,160. The deed did not purport to be signed in the handwriting of Mrs. Addison, but purported to be signed by the making of a cross mark between the names “Martha Jane” and the name “Addison” and by writing the word “her” over the cross mark and the word “mark” beneath it.
 

 Before ' recording this deed H. Kirby Addison had an affidavit signed by one T. J. Bridges, before a notary public, in Mississippi, stating that the deed was executed in the presence of the affiant, who was one of the subscribing witnesses, and in the presence of the other subscribing witness, Elton Bridges, by Mrs. Addison, by the making of her mark on the day and' date stated in the deed, and for 'the objects and purposes therein stated.
 

 
 *427
 
 In 1944 this litigation was commenced by the heirs of Mrs. Addison, all except H. Kirby Addison, petitioning the district court to have the succession of their parents H. H. Addison and Martha Jane Addison opened, and to have the petitioners recognized as the heirs at law of the deceased. The petitioners obtained a rule on H. Kirby Addison to show cause why the relief which they prayed for should not be granted. In answer to the rule H. Kirby Addison claimed title to the property of the -succession of his mother by virtue of the deed dated January 23, 1933. By a supplemental petition the plaintiffs alleged that their mother had not signed the deed but that her mark thereon was forged.
 

 After a trial of the case, in which a large volume of testimony was heard, the judge apparently found that the deed under which the defendant H. Kirby Addison claimed title was not forged, but that Mrs. Addison had signed it by making her mark, as indicated on the deed. The judge decided however that the deed was null, for two alternative reasons, first, that it was a simulation, and, second, that if it was not a simulation it was intended to have effect only after the death of Mrs. Addison and was therefore null because not made in one of the forms required by law for a last will and testament.
 

 ■ In addition to the real estate the plaintiffs claimed that the estate of Mrs. Addison owned also a mortgage note for $489, some gold coins amounting to $135, the implements on the farm, a pair of mules, about forty head of cattle, an automobile of 1929 model, etc. The judge determined that all of these items belonged to H. Kirby Addison, with the exception of the mortgage note. He found that the note belonged to the estate of Mrs. Addison.
 

 All parties have appealed from the judgment.
 

 The question of whether Mrs. Addison placed her mark on the deed, executed ih 1933, or whether her mark was forged, produced the bulk of the testimony in the district court. We will state the material facts as we have determined them.
 

 The deed was prepared at the request of H. Kirby Addison in the law office of R. T. Carter, an attorney, who was dead at the time of the trial. It was written with pen and ink, and contains the usual language found in a sale of reabproperty, including a detailed description of the property. It was signed by H. Kirby Addison, T. J. Bridges, and Elton Bridges. These last two named persons, who were the brother and nephew, respectively, of Mrs. Addison, signed the instrument as witnesses.
 

 The two Bridges, who reside -in Mississippi, were examined as witnesses by means of written interrogatories and cross-interrogatories. They testified that, in their presence Elton Bridges wrote the name “Martha Jane Addison” on the deed and that she then placed her “X” thereon with full knowledge of the contents of the in
 
 *428
 
 strument and after it had been read to her. They further stated that the attorney, R. T. Carter, was present at the time when the deed was executed. To this extent, they verify exactly the story as told by H. Kirby Addison. However, in answer to one question, both witnesses stated that the deed was typewritten, although T. J. Bridges stated that due to the lapse of time he did not remember the appearance of the deed too well.
 

 There is also the testimony of R. F. Barbier to support in some measure the contention of the defendant that the deed is valid. Barbier was a friend of the attorney, Carter, and accompanied him to the Addison home some time in 1933 to be a witness to the signing of some “papers.” On their arrival there, they were informed that Barbier’s presence as a witness was not needed since there were already two people inside the house who were going to witness the signing of the “papers.” Thus, while Barbier could not say positively that Mrs. Addison signed the deed, he did testify that on a day in 1933, which apparently was the day on which the alleged transaction took place, some papers were signed in the Addison home, that the attorney Carter was present, that he, Barbier, who remained in the automobile, saw Mrs. Addison moving about inside the house, and that after the signing was completed, H. Kirby Addison brought two men out to the automobile, who were introduced to Bar-bier as being Mrs. Addison’s brother and nephew. These men evidently were the Bridges, who were the subscribing witnesses to the deed.
 

 The plaintiffs urge as evidence of the forgery the fact that Mrs. Addison could sign her name, and on several occasions did so in signing other documents. However, from other testimony and documents offered at the trial, it appears that Mrs. Addison was whimsical or eccentric when called upon to sign her name. On some occasions she would write her name on the document, at other times she signed only by making her mark, and at still other times she would direct her son, H. Kirby Addison, to sign her name for her.
 

 The plaintiffs contend also that the testimony of T. J. Bridges and of Elton Bridges, as taken by depositions is false. The evidence does not sustain this contention. The testimony of these men is unequivocal on the vital question of who placed the mark by Mrs. Addison’s name, and appears to be true in every other respect, except insofar as the witnesses believed that the document was typewritten, when in fact it was written in pen and ink. Actually, this discrepancy in their testimony neither adds to nor detracts from the weight of it. From the fact that they were unable to describe exactly the document which they witnessed, it might be argued that they had never signed it; but the plaintiffs are not contending that the Bridges did not sign the instrument as witnesses, or that their signatures were forged, but are contending that it was Mrs. Addison’s
 
 *429
 
 signature that was forged. Therefore, we do not consider this discrepancy in the testimony of the two Bridges to be a matter of great importance.
 

 The plaintiffs also offered the testimony of two of Mrs. Addison’s grandchildren that at several times after the alleged sale in 1933 Mrs. Addison referred to the land as “my land,” and also that she had told them that she wanted some of the money which they would inherit from her to be used for placing a tombstone on the grave of their deceased father, Mrs. Addison’s son. While this evidence casts some doubt on whether Mrs. Addison actually made the sale of her interest in the land, it is not enough to destroy the proof that she did make it. Assuming that she believed that she still owned a large interest in the land after the sale in 1933, it might have been that she had become forgetful in her old age. It must be remembered that even after the sale, she continued to live on the farm with her son, H. Kirby Addison, and it Would be understandable for her to continue to refer to it as “my land;
 

 After a careful consideration of all of -the evidence we find the weight of it to be in favor of the defendant on the issue of whether Mrs. Addison signed the deed in 1933. The circumstantial evidence to the contrary is destroyed by the testimony of the two eyewitnesses to the signing of the instrument, plus the corroborating testi-. mohy of the- witness, R. F. Barbier. We conclude,’ therefore, that Mrs. Addison did sign the deed by placing her mark on it. This conclusion seems to be in accord with the finding of the judge of the district court.
 

 The remaining and perhaps most important question is whether the sale in contest was a simulation, that is to say, whether the price or consideration stated in the deed was actually paid by H. Kirby Addison to his mother. In this connection it must be remembered that the deed was not an authentic act, but was sworn to by one of the subscribing witnesses before a notary public six years after the deed was made, and three years after the death of Mrs. Addison. Addison and one of the subscribing witnesses to the deed, Elton Bridges, testified that $160 was paid in cash by Addison to his mother at the time of the execution of the deed. The other subscribing witness, T. J. Bridges, did not remember seeing the money pass from Addison to his mother during the transaction. For the balance of the purchase price, Addison gave his check for $2,000 drawn on a local bank, signed by him and made payable to “Mrs. M. J. Addison”. He produced the cancelled check on the trial of this case. It bears the endorsement “M. J. Addison”, but there is no proof that the endorsement is in the handwriting of Mrs. Addison. . The check is endorsed also by one Jos. M. Sitmán, who, according to the evidence in the case, was the proprietor of a grocery store, in Greensburg, Louisiana, near the' farm on which the deed was executed. The perfor
 
 *430
 
 ation on the check shows that it was cashed by the bank of Greensburg, on which it was drawn, on January 25, thus: “Paid 1.25.33”. Sitman, who admitted that he was a close friend of Addison, testified that he cashed the check and received or retained the proceeds, $2,000, as a loan from Mrs. Addison. He testified that he repaid the loan before her death, in this way: That at Mrs. Addison’s request he paid two notes which her son, Hosea Lea Addison, owed the bank, one for $200 and the other for $100; that he gave her a draft amounting to approximately $900; and that the balance of the $2,000, approximately $800, was credited to the account at his grocery store.
 

 The testimony of Sitman is not convincing. In the first place he admitted that the account to which he credited the sum of $800 was an account against H. Kirby Addison, and in the second place he admitted that he was unable to produce the can-celled draft or any evidence of a draft for $900 which he said he had given to Mrs. Addison. He testified that at the time when he received the $2,000, proceeds of the check which H. Kirby Addison had given to Mrs. Addison, dated January 23, 1933, he, Sitman, gave a promissory note for $2,000 to Mrs. Addison to represent a loan made by her to him for that amount. .But he was unable to produce the cancelled note or to account for his inability to produce it. It is obvious that the district judge was not impressed favorably by the testimony of Sitman, otherwise the judge would not have decided that the transaction between Mrs. Addision and H. Kirby Addison was a simulation.
 

 This issue as to whether the consideration for the sale was paid by H. Kirby Addison to his mother, is entirely an issue of fact, for the solution of which we defer largely to the finding of the district judge.
 

 In that respect the argument advanced for the defendant is mainly that the plaintiffs did not plead in their supplemental petition that the transaction by which Mrs. Addison transferred her property to the defendant was a simulation, or that the price or consideration was not actually paid. The allegation, stated exactly, in the supplemental petition is “that H. Kirby Addison forged and fraudulently executed” the instrument in question. Our opinion is that that allegation necessarily includes the implication that there was no consideration paid by Addison for the deed which he is charged with having forged and fraudulently executed. Besides, no objection was made during the trial of the case to the testimony indicating that Mrs. Addison did not receive the price or consideration stated in the deed. On the contrary Sitman was a witness for the defendant.
 

 We do not consider the testimony that Mrs. Addison received $160 in cash from her son at the time of the transaction as a matter of much importance. There is no explanation as to why that comparatively small part of the price stated was paid in
 
 *431
 
 cash instead of being included in the check for the larger portion of the price. Nor is there any proof that Mrs. Addison retained the $160 cash, or that she had any special use for that amount of cash at the time.
 

 Insofar as the ownership of the movable property is concerned, i.e., the mortgage note, the gold coins, the livestock, etc., the issues are entirely questions of fact, and the testimony is contradictory and confusing. The judge who heard the testimony is better qualified than we are to judge of its credibility.
 

 The judgment is affirmed.