223 So.2d 5 (1968)
SALLEY GROCER COMPANY, Inc., Plaintiff-Appellee,
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant-Appellant.
No. 11120.
Court of Appeal of Louisiana, Second Circuit.
December 3, 1968.
On Rehearing April 1, 1969.
Writ Refused June 9, 1969.
*6 Mayer & Smith, Shreveport, for appellant.
Lunn, Irion, Switzer, Johnson & Salley, Shreveport, for appellee.
Before AYRES, BOLIN and PRICE, JJ.
AYRES, Judge.
This is an action upon a fidelity bond denominated a "blanket crime policy" wherein *7 defendant bound itself, subject to certain specified terms, conditions, and limitations, to pay plaintiff, as the assured, for the loss of money, securities, or other property "which the Insured shall sustain through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others."
Through the defalcation in 1966 of one of its employees, H. Drew Hearne, plaintiff allegedly sustained a loss of $16,106.24, reimbursement of which plaintiff seeks from defendant, as well as the recovery of penalties and attorneys' fees, for the alleged arbitrary refusal of defendant to pay the claim.
From a judgment in favor of plaintiff for the principal sum, defendant appealed. By answer to the appeal plaintiff prays that the judgment be amended by the allowance of penalties and attorneys' fees.
Alleging a prior defalcation of Hearne in 1958, defendant contends the bond no longer afforded coverage for this employee. The defense is based upon the language of the policy which provides:
"The coverage of this Policy shall not apply to any Employee from and after the time that the Insured or any partner or officer thereof not in collusion with such Employee shall have knowledge or information that such Employee has committed any fraudulent or dishonest act in the service of the Insured or otherwise, whether such act be committed before or after the date of employment by the Insured."
Whether the employee's conduct in 1958 constituted fraudulent or dishonest acts is a question presented for determination. An answer in the affirmative would present another crucial question as to whether plaintiff or any of its officers had knowledge or information of the employee's acts. These questions must be resolved from the facts and circumstances established by the record.
Plaintiff has engaged in the wholesale grocery business since 1935. Its principal office and warehouse are located in Shreveport. Branch offices and warehouses are located in Monroe and Bernice. Hearne was employed as a salesman for 12 or 13 years prior to the alleged defalcation of 1966. He worked out of the Monroe office of which Charles Fred Salley, Sr., was manager. The territory over which Hearne served as salesman consisted generally of northeast Louisiana. He called weekly on his customers, about 125 in number, at the rate of 20-30 per day. His sales averaged $35,000.00 to $40,000.00 per month. He made the sales, fixed the terms of credit, and made the collections. At the conclusion of each day's services he made his reports which, together with the collections, were placed in a safe overnight. These were processed by office personnel the following day.
Sales and collections were made weekly; collections were for the sales of the preceding week. Three copies of invoices were madea first sheet, a second sheet denominated an "original," and a delivery sheet. One of these was delivered to the customer. Collections were generally made on an invoice basis; that is, upon payment of each invoice, the salesman would mark the customer's copy "Paid."
Plaintiff's salesmen were granted much leeway and were permitted to exercise considerable discretion in the conduct of their operations in making sales and collections. They were not required, after making collections, to remit to the employer the precise checks or cash received by them. Salesmen, in some instances, would use cash received in prior collections to cash checks for other customers or to adjust differences in checks received in the payment of accounts. It was permissible to remit collections by means of the salesmen's personal checks. Though described as an excellent salesman, Hearne was characterized as a very bad collector.
*8 With respect to the incident of 1958, upon which defendant relies to establish its primary defense, Charles Fred Salley, Sr., plaintiff's manager, testified Hearne reported to him that the accounts of some of his customers were out of balance and expressed a desire to get them "straightened out," whereupon, without further inquiry, Hearne was referred to one of plaintiff's bookkeepers for assistance in reconciling the accounts. This reconciliation disclosed to the bookkeeper that there was a deficit in Hearne's remittances of $1,984.86. Thereupon Hearne delivered his personal check to the bookkeeper to cover this deficit. The funds thus received were credited to the appropriate accounts. The conclusion of the matter was not immediately made known to Salley, but the bookkeeper, several days later, reported to him that the matter had been taken care of.
Of primary importance are the questions (1) as to whether Hearne's conduct of 1958 warrants a conclusion that his acts were fraudulent or dishonest within the intent and purpose of the bond, and (2) whether plaintiff or any of its officers had knowledge or information that the employee's acts were fraudulent or dishonest.
If Hearne's acts in 1958 should be judged in the light of his defalcation eight years later, it might appear reasonable to infer that his prior acts were fraudulent and dishonest. However, no connection between the two incidents was shown, particularly of a continuous course of conduct. The latter incident was too remote to establish the employee's intent and purpose eight years prior thereto. Therefore, the employee's acts of 1958 must be judged independently of those of 1966.
Hearne, as a witness for defendant, testified he had no intent whatsoever to commit a dishonest act or to defraud his employer. His acts in reporting the discrepancies to his manager, in expressing a desire to straighten his accounts, and, subsequently, in making payment, tend to support his testimony.
If the salesman's acts could be characterized as fraudulent and dishonest, the record makes it very clear that neither plaintiff nor any of its officers had any knowledge or information they were of that character. Plaintiff's officers testified they had no such knowledge. Subsequent actions confirm this fact. Hearne was continued in his employment for eight years following the incident of 1958. In the meantime his wife was employed and served in the bookkeeping department of the business. No showing was made that any suspicion had been aroused in Salley, his assistant manager, or other of the office personnel as to Hearne's honesty. The manager made no report of the incident to fellow officers of plaintiff corporation, who were his brothers, apparently because of the insignificance of the incident.
Generally, in the absence of proof to the contrary, there is a presumption that all men act fairly, honestly, and in good faith. Kalpakis v. Kalpakis, 221 La. 739, 60 So.2d 217, 33 A.L.R.2d 1224 (1952); Curran & Treadaway v. American Bonding Co., 193 La. 763, 192 So. 335 (1939).
The purpose of contracts of fidelity insurance is to obtain full indemnity for the acts of the person bonded, and that purpose should not be defeated unless a clear case of breach of his obligation by the person for whose protection the bond is written is presented. Thus, an employee who becomes indebted to his employer through mistake or carelessness or through application of funds of his employer for his personal use, with no intent to defraud, is not guilty of embezzlement or of a dishonest act within the intent of the bond. Therefore, the fidelity bond indemnifying against loss by any act of fraud or dishonesty of a bonded employee covers only loss from acts of fraud or dishonesty, and the loss must be actually suffered by the employer to warrant recovery on a bond conditioned against the dishonesty of an employee. The mere fact that a shortage is found does not justify a finding of fraud *9 and dishonesty. Nor is a mere discrepancy in an employee's accounts sufficient to establish dishonesty within the intent of a fidelity bond in view of the rule of law that every man is presumed to be honest until the contrary is established.
In the case of Curran & Treadaway v. American Bonding Co., supra, it was held that a corporate employer was not barred from recovery on a fidelity bond containing a provision that the bond should terminate upon the discovery by the employer of any fraudulent or dishonest act on the bonded employee's part, though the employer's president admitted that the employer had given the employee, a former collector, a check to enable him to make good a shortage in his accounts with another party, for whom he was collecting rents, where there was no showing that the collector took any money of the other party with the criminal intent of depriving him of its use and benefit. In this connection the court stated:
"It is to be observed that while every act of embezzlement involves a shortage, every shortage does not involve an act of embezzlement. A shortage in the accounts of an employee causing loss to an employer may result from mistake, disobedience of orders, or bad judgment, and not from any wrongful intent on the part of the employee. Thus, it has been held that an employee who becomes indebted to his employer through mistake or carelessness, or using funds of the employer for his personal use with no intent to defraud, is not guilty of embezzlement and therefore of a dishonest act within the meaning of a fidelity bond." 192 So. 335, 337.
In the case of Bank of Commerce & Trust Co. v. Union Indemnity Co., 174 La. 1014, 142 So. 156 (1932), the defendant issued to plaintiff its policy covering loss "through any dishonest act whatever" on the part of an employee which was to expire on written notice, or "immediately upon the discovery by the Insured of a default hereunder on the part of such employee." There a cashier, on August 21, 1930, was found to have taken from the bank's cash the sum of $150.00 for which he placed in his till his due bill for that amount. His salary was $150.00 per month and he intended to repay the amount by services to be rendered in the ensuing month. The employee, however, was requested to and did resign about December 31, 1930, after which it was discovered that he had embezzled $12,545.00 which he had covered by forged, fictitious, and unauthorized notes. In rejecting the defense that the bond as to the employee expired on August 21, 1930, when the bank discovered the shortage of the $150.00, the court stated:
"We are of opinion that the defense is without merit. The policy of June 9, 1930, covered only dishonest acts, and there could be no default on that policy except by dishonesty. And, before denouncing an employee to his bondsman as dishonest, an employer has a right to satisfy himself that the employee is in fact dishonest, and need not do so on mere suspicion. American Surety Co. v. Pauly, 170 U.S. 160, 18 S.Ct. 563, 42 L. Ed. 987." 142 So. 156, 157.
In the cases cited, the policy provisions relied upon were of the same import as the one under consideration in this case. The defense was the same and the courts found that the acts of the employees were not, in themselves, fraudulent or dishonest. In the instant case there is no showing in the record that Hearne had any criminal intent, by his acts of 1958, of defrauding plaintiff or of acting dishonestly, for, as stated, he voluntarily reported the discrepancies in his accounts, expressed a desire to straighten them out, and, moreover, gave his own check to make appropriate adjustments in the accounts. The words "fraudulent or dishonest act" imply positive acts of wrongdoing, the discovery *10 of which releases the insurer of its obligation on the bond.
Discovery is an important element, and one of the questions for determination in this case is: Did plaintiff acquire knowledge of any positive act of dishonesty committed by Hearne which would, under the provisions of the bond, immediately effect its termination? This question, we think, must be answered in the negative.
Our conclusion is that defendant has not established that Hearne committed a fraudulent or dishonest act in 1958 or that plaintiff or any of its officers had knowledge of such an act, if committed, that would serve under the provisions of the bond, to which we have referred, to effect its cancellation as to the employee in 1958.
Lastly, defendant attacks the sufficiency of the evidence to establish the extent or the amount of the loss sustained by plaintiff. The record discloses that knowledge of Hearne's defalcation in 1966 was acquired after he had an accident. His absence from his employment required that his customers be served by Samuel Joseph Tubbs, Jr., plaintiff's assistant manager in Monroe. The loss was established through a comparison, made by Tubbs, of the invoices in plaintiff's possession, evidencing sales and deliveries of merchandise, with the copies in the customers' possession which Hearne had marked "Paid" for which no remittance had been made by the salesman to his employer. From this investigation the loss was determined and listed.
Neither invoices evidencing the sales allegedly made, nor records showing delivery of the merchandise purportedly sold, nor receipts for the payments said to have been made to plaintiff's salesman were placed in evidence. No effort was made to establish these purported payments by the testimony of plaintiff's customers, by their checks, or other supporting documents. Plaintiff's former salesman, called as a witness by defendant, was not questioned under cross-examination as to either the receipt or disposition of any payments purportedly made to him.
Tubbs, plaintiff's assistant manager and witness, knew nothing of this affair except from information disclosed by his investigation, or as obtained from discussions with plaintiff's customers, or as gleaned from their records, none of which were placed in evidence. Tubbs' ultimate findings and conclusions were recapitulated in a listing, introduced in evidence, of the 32 accounts involved, with the shortage attributable to each as determined by him in the course of his investigation. Tubbs' testimony was given and the offering made despite defendant's timely and persistent objection to the effect that the testimony and offering were not the best evidence available or accessible, but that such evidence constituted matters of opinion and hearsay. These objections, in our opinion, possess considerable merit. The testimony based upon information furnished by others or obtained from records of others is hearsay and, as such, is not legal or competent. Thompson v. Brown, 163 So.2d 868 (La.App., 2d Cir. 1964).
Conclusions reached by a witness from this character of evidence, and particularly from a review of records not authenticated, constitute the witness' opinion, particularly as to the content of records viewed by him.
To permit the introduction of this character of evidence is to deprive the opposing party of the right of cross-examination of the persons providing the information or of the persons making or keeping the records reviewed. Even testimony taken in a former proceeding assumes this character and cannot be admitted in evidence against a party who did not have the right of cross-examination. Williams v. Jahncke Service, 217 La. 1078, 48 So.2d 93 (1950); Succession of Derigny, 128 La. *11 853, 55 So. 552 (1911); Rouyer v. Carroll, 47 La.Ann. 768, 17 So. 292 (1895).
From our review of the record, it appears obvious to us that there is better evidence by which plaintiff could have offered to establish its loss. For instance, on proper authentication, the invoice copies designated "Delivery Sheets," signed by or on behalf of the customer, would have established delivery of the merchandise purportedly sold; the customer's copies, upon which the salesman is said to have acknowledged payment, together with the customer's supporting testimony, paid checks, or other corroborating evidence would have established payments to the salesman. Plaintiff's receipt or nonreceipt of the funds collected by its salesman can be established by the testimony of those of its employees charged with that responsibility. These are mere nonexclusive examples of what we deem to be some of the legal and competent evidence which we think is available to the parties, the introduction of which may tend to either support, diminish, or defeat plaintiff's claim, a matter as to which we neither have nor express, at this time, the slightest opinion.
Under the authority of LSA-C.C. P. Art. 2164, cases may be remanded for the introduction of additional evidence when by such action the ends of justice would best be served. Magnolia Petroleum Company v. Boudreaux, 233 La. 409, 96 So.2d 650 (1957); Dietz v. Dietz, 227 La. 801, 80 So.2d 414 (1955); United Brotherhood of Carpenters & Joiners of America, etc. v. Stephens Broadcasting Co., 214 La. 928, 39 So.2d 422 (1949); Reich v. Grieff, 214 La. 673, 38 So.2d 381 (1949); Succession of Addison, 212 La. 846, 33 So.2d 658 (1947). In the instant cause, we experience a feeling of that nature.
We are, however, of the opinion that plaintiff's claim for penalties and attorneys' fees should not be concluded at this stage of the proceedings. The propriety of such an award should, in our opinion, be based upon all the facts as may be eventually included in the record, such as, for instance, defendant's investigation vel non of plaintiff's purported loss and its good or bad faith in its determination to refuse payment.
Accordingly, for the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now ordered that this cause be remanded to and reinstated on the docket of the First Judicial District Court in and for Caddo Parish, Louisiana, and reopened for the limited purpose of affording to both plaintiff and defendant an opportunity to adduce further and additional evidence with respect to the extent and amount of the loss allegedly sustained by plaintiff, and as to plaintiff's entitlement vel non of penalties and attorneys' fees, and for a redetermination of these issues by the court, all in accordance with law and consistent with the views herein expressed.
Plaintiff-appellee is assessed with the cost of this appeal. The taxation of all other costs is to await final determination of this cause.
Reversed and remanded.

ON REHEARING
PRICE, Judge.
Although we granted a rehearing on the application of both appellant and appellee, we find no error in our original opinion in finding that the trial court was correct in holding that the fidelity bond had not been cancelled due to any knowledge of an official of the Salley Grocer Company of prior dishonest or fraudulent conduct on the part of the employee in question, Mr. H. Drew Hearne.
On reconsideration, we are of the opinion that this court committed error in its original *12 opinion in holding that the evidence produced by plaintiff to prove the amount of its loss was inadmissible and that plaintiff had not established its claim by a preponderance of the evidence. In our original opinion we held that the testimony of the principal witness for plaintiff, Samuel J. Tubbs, Jr., was hearsay and that the documentary evidence offered in connection with his testimony was secondary evidence and should have not been allowed. Our opinion characterized his testimony as being a conclusion or an opinion based on hearsay evidence.
Mr. Tubbs was the assistant manager of the Monroe branch of the Salley Grocer Company and was the person who discovered the shortage in the account of the involved employee, H. Drew Hearne. Mr. Tubbs' testimony gave a detailed description of the method of sales and accounting utilized by the Salley Grocer Company. Most of their sales from the Monroe Branch are made to small retail grocery establishments throughout northeast and north central Louisiana. The territory is divided into routes which are designated to particular salesmen who call regularly on customers in their area. Calls are usually made weekly. The salesman is responsible for all collections for merchandise sold on his route. After taking an order for merchandise the salesman prepares an invoice in triplicate, the original of which goes to the customer with delivery of merchandise. One copy is signed by the customer acknowledging receipt of the merchandise. This copy goes to the accounting department and is posted as a debit on a ledger card carried in the name of the customer. The third copy is referred to the salesman who takes it along with a statement of unpaid invoices to use in collecting from his customer. Normally, the salesman collects the prior week's invoices from the customer and marks the customer's copy of the invoice "paid" as a receipt. At the end of each day the total collections are turned into the company and a list prepared by the salesman of the accounts he has collected. Based on the schedule of amounts collected prepared by the salesman, the individual customers are given credit on their ledger card.
The testimony of Mr. Tubbs, that was allowed by the trial judge and previously declared inadmissible by this court, consists of his description of the method used to ascertain the accounts collected by Mr. Hearne and not remitted to the company. Mr. Tubbs testified that he visited each customer on Mr. Hearne's route and attempted to verify the balance shown as owing by the company records with the customer. Thirty-two of the customers disputed their balance, as reflected by the statement prepared by Salley Grocer Company. Mr. Tubbs testified that these customers presented invoices marked "paid" to establish that the balance as reflected by the statement was incorrect. He testified that he was familiar with the handwriting of Mr. Hearne and that the signature of Mr. Hearne on these invoices was genuine. He further testified that he made a listing of these invoices that were marked paid by Mr. Hearne but were outstanding on the company records, and, subsequently, the company gave each customer credit for these amounts on the customer ledger card. He further prepared a summary of these amounts to reflect the total discrepancy in the accounts of Mr. Hearne and this summary was admitted in evidence in the trial court.
There is no question that Mr. Hearne was guilty of misappropriating funds of the company. He was called as a witness for defendant and his testimony, in substance, admits that he diverted company funds to his own use. The only issue is whether the plaintiff has produced sufficient proof of the amount of the loss.
The provisions of the contract sued upon which are pertinent to the question of sufficiency of proof are as follows:
"1. Employee Dishonesty Coverage *13 Loss of Money, Securities and other property which the Insured shall sustain through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others."
* * * * * *
"Section 6. Books and Records. The Insured shall keep records of all the insured property in such manner that the Company can accurately determine therefrom the amount of loss."
The amounts herein claimed by plaintiff from defendant arise under contract. It is the obligation of the insured to keep such records as would reasonably establish any loss which might occur.
The ledger card of each customer whose account was involved in the discrepancy was introduced into evidence. Although there are some entries on the ledger cards that were not made in the regular course of business (specifically the credits to the accounts which were charged to defendant Hartford), we are of the opinion that these records are admissible in connection with the testimony of Mr. Tubbs. Each time that an entry is made on the ledger card the current balance of the customer is also posted thereon. The only possible or practical way to determine if a customer's balance was correct was to verify it with the customer. The evidence disclosed that some 125 retail stores were serviced by Mr. Hearne on his route.
The defendant was advised, at the time of the discovery of the loss, of the method plaintiff had utilized to ascertain the extent of the loss and was offered a list of all customers whose accounts were involved in the shortages. Mr. Tubbs testified he offered to take defendant's representative to all customers involved and show the representative the invoices he had received in making his analysis. Defendant did not see fit to join with plaintiff in a survey of these accounts. The principal reason for not allowing testimony under the hearsay rule is to provide the adverse party the right to cross-examine the parties who provide the source of the information. In the instant case, defendant could have exercised this right to question any customers or view any of the customers records relied on by plaintiff by participating in a survey of the accounts.
Having failed to avail itself of this privilege at a time when it was both practical and convenient, it ill behooves defendant to now rely on technical rules of evidence to require plaintiff to attempt to produce the large number of customers from scattered areas into court with their records to prove its claim with certainty.
The jurisprudence has on occasion made exceptions to the hearsay and best evidence rules of evidence when necessity demands it. This problem is discussed in 29 Amer. Jur. 2d, Sec. 496, as follows:
"While the hearsay rule has been asserted and applied so often that it is not questioned, it seems safe to assert that the courts have generally been willing to relax the rule in the interest of justice. As with most rules, the hearsay rule is not absolute; it is replete with exceptions. Indeed, it has been said that exceptions to the hearsay rule have virutally swallowed the rule.
"The two underlying reasons for any exception to the hearsay rule are a necessity for the exception and a circumstantial guaranty of the trustworthiness of the offered evidencethat is, there must be something present which the law considers a substitute for the oath of the declarant and his cross-examination by the party against whom the hearsay is offered. The word `necessity' as thus used is not to be interpreted as uniformly demanding a showing of total inaccessibility of first-hand evidence as a condition precedent to the acceptance of a particular piece of hearsay, but necessity exists where otherwise great practical inconvenience would be experienced in making the desired proof."
*14 There is also authority for allowing evidence in the nature of a summary given by a witness of his inspection of a number of documents where the circumstances involved make it a necessity. In Section 458 of Volume 29, American Jurisprudence 2d, this rule is stated as follows:
"It is a general rule of evidence, sometimes declared by statute, that it is permissible for a witness to give a summary based on an inspection of a number of documents where the documents are so numerous and intricate as to make an examination of them in court impractical, provided, of course, that the documents themselves are competent as evidence and that they are made accessible to the opposing party in order that the correctness of the summary may be tested on cross-examination."
It has been held that in suits to recover under a theft or burglary policy that policy provisions requiring conclusive proof of loss should not be rigorously construed and that the insured should only be required to present evidence reasonably establishing a loss to recover. Purity-Reiss Candy Co. v. Maryland Casualty Co., La.App., 128 So.2d 677 (4th Cir., 1961), and cases and authorities cited therein. We are of the opinion that the evidence submitted by plaintiff is admissible to establish a prima facie case of the amount of loss sustained by the misappropriation of its employee, H. Drew Hearne, and since defendant has not offered any evidence in rebuttal, it constitutes a preponderance of the evidence sufficient to sustain plaintiff's demand.
No ruling was made in our original opinion of the correctness of the district court judgment rejecting plaintiff's demand for penalties and attorney's fees under the provisions of LSA-R.S. 22:658. Plaintiff contends that this refusal by defendant to pay its claim was arbitrary and unreasonable. We agree with the trial judge's ruling on this issue as the defendant was in good faith in urging the defense that the policy excluded the involved employee, Mr. Hearne, because of the alleged acts of dishonesty known of by his employer.
It is therefore ordered, adjudged and decreed that the judgment rendered herein be vacated and set aside, and that the judgment appealed from be affirmed at appellant's cost.