(107 So. 234)

No. 25352.

## BURT v. BURT.

(Jan. 4, 1926. Rehearing Denied Feb. 1, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Appeal and error ⚖️999(1), 1008(1)—Findings of fact by trial judge or jury entitled to great weight, and not disturbed by appellate courts unless manifestly erroneous.**

Findings of fact by trial judge or by jury are entitled to great weight, and appellate courts will not lightly disturb them unless manifestly erroneous.

2. **Bills and notes ⚖️517—Evidence held to support finding that signature to note was genuine.**

In action on note purported to have been signed by defendant and delivered to plaintiff in connection with a written agreement also purported to have been signed by him, where defendant contended signature to both note and contract were forged, *held*, evidence of expert witnesses, considered in light of admission defendant made on cross-examination as to plaintiff's "holding my note," supported finding of jury that signature to note was genuine.

Appeal from Civil District Court, Parish of Orleans; Columbus Reid, Judge.

Action by John C. Burt against Thomas R. Burt. Judgment for plaintiff, and defendant appeals. Affirmed.

Beer & Robbert, of New Orleans, for appellant.

Andrew B. Booth, Jr., of New Orleans, for appellee.

BRUNOT, J. This is a suit upon a promissory note. The case was tried before a jury; a verdict was rendered in favor of plaintiff for the full amount of the note; and the court entered judgment for that sum with legal interest thereon from August 1, 1920, and for costs. From this verdict and judgment defendant appealed.

The note bears the same date and purports to have been signed by defendant and delivered to plaintiff in connection with and pursuant to a written agreement which also purports to have been signed by defendant. The defendant denies the genuineness of the signature to both the note and the agreement.

[1] The case presents only a question of fact. It is the rule that findings of fact by the trial judge or by the jury are entitled to great weight and the appellate courts will not lightly disturb such findings. This court has held that it will not do so unless the finding is manifestly erroneous.

The written agreement and the note sued upon are attached to the petition. The agreement is as follows:

"New Orleans, La.          Jan. 30, 1920.

"I enter into agreement with J. C. Burt to give him his $4,000 four thousand dollars back to him and take his stock in cigar factory No. 45 in case he becomes dissatisfied with his stock or in case it fails to produce a reasonable dividend I agree to comply with this agreement at the expiration of the first six months in factory No. 45.

"[Signed]          T. R. Burt."

The note is dated January 30, 1920, is for the sum of $4,000, is payable to the order of J. C. Burt six months after date, and is signed T. R. Burt.

The plaintiff and the defendant are brothers. The plaintiff was a resident of Mississippi until a short time prior to the transactions which gave rise to this suit. The defendant is a physician and for many years has resided in New Orleans, where he has practiced his profession and also became identified with certain local business enterprises. He was the president of Reguera & Berengher, Inc., a corporation engaged in the manufacture and sale of cigars. The record shows that at no time, from the date of the organization of this corporation to that on which it was declared insolvent and a receiver was appointed to liquidate its affairs, did its earnings equal its operating expenses. The excess of the operating expenses over the concern's earnings was met by loans from time to time. These loans were secured from

a local bank on the note of the corporation, indorsed by its officers and directors. On January 1, 1920, the outstanding note of the corporation amounted to $10,000. It was about this time that the plaintiff came to New Orleans for a minor operation, the exact nature of which is not disclosed, and called upon the defendant. He was given a room in defendant's house, where he remained, to all intents and purposes, as one of the family until the note sued upon became due and payment of it was demanded. Shortly after becoming an inmate of defendant's house, plaintiff informed his brother that he had several thousand dollars in a Mississippi bank which was earning only 4 per cent. and that he would like to invest his money to better advantage. Plaintiff testified that defendant advised him to invest it in the purchase of Reguera & Berengher, Inc., stock; that the corporation was on a thoroughly substantial basis; that it was operating at a profit; that it had not yet declared a dividend, but that its surplus earnings had been turned back into the company; that the business and prospects of the company assured large dividends to the stockholders and certain profits in the enhanced value of their stock, and that the corporation would declare a 15 per cent. dividend in a short time; that on these assurances from his brother, who was president of the corporation, he agreed to invest $4,000 in the purchase of its stock provided the defendant would reimburse him that amount and take over the stock in the event plaintiff, for any reason, was dissatisfied with the investment, the only condition being that the return of the money was not to be demanded and the transfer of the stock was not to be made until the expiration of six months from January 30, 1920; and that the written agreement in the record and the note sued upon were executed to bind the defendant and make his agreement enforceable.

The defendant testified that his signature was forged both to the written agreement and to the note; that he explained to the plaintiff that his own money was invested in Reguera & Berengher, Inc.; that he considered it was safely invested; that the business of the concern was promising; that if plaintiff cared to do so he could look over the factory at his leisure, and if impressed with its prospects and possibilities he could purchase stock of the company. There is one significant statement in defendant's testimony that he did not correct or explain, and that his counsel did not attempt to have him do so. It is found on page 67 of the transcript, where he said on cross-examination:

"About May, 1920, he spoke to me about the company refunding him his stock money that he paid in, and I told him: 'Listen, according to the by-laws of this corporation, before this company will pay you any money, you have first to take it up with the board of directors, because they have first sanction on the stock.' He wrote this letter in May or June in 1920, *and at the same time he was holding my note which he considered 100 per cent. good.*" (Underscoring by the court.)

In the absence of any correction or explanation, we are of the opinion that the statement by defendant that, in May or June, 1920, plaintiff was holding defendant's note for the money plaintiff had invested in the purchase of Reguera & Berengher, Inc., stock, and that plaintiff considered this note 100 per cent. good, as destructive of defendant's contention that the signature to this note was a forgery.

For the comparison of signatures, plaintiff offered the written agreement and the note sued upon, and two checks, two leases, two order forms of the Louisiana board of health, one prescription, all admittedly signed by defendant, and several specimens of defendant's handwriting. The defendant offered photographic reproductions of the agreement and note and five checks signed by him. He also offered five other checks in the original. To the layman's eye there is practically no difference in the signature to the several docu-

ments offered in evidence by either or both litigants. Defendant contends that he invariably adds "M. D." after his signature, and that the omission of these letters from his signature to the agreement and note sued upon evidences the forgery he alleges. Unfortunately for this contention, several of the checks and documents in the record, which defendant admits he signed, do not show the letters "M. D." after his signature.

Two experts were called, Prof. L. C. Spencer for the plaintiff and Mr. E. A. O'Sullivan for the defendant. These experts testify at length and explain the reasons for the conclusions they announce. Prof. Spencer is one of the acknowledged experts on handwriting in the South. The scientific study of penmanship has been his life work. He is one of a family of penmen and the Spencerian pen is known throughout the civilized world. In 15 pages of the record he has delivered a thesis on penmanship and pointed out the ease with which a forgery may be detected in a most interesting and instructive manner, and he concludes by staking his reputation as an expert upon the correctness of his finding that the same individual who signed the checks, leases, etc., that the defendant admits he signed, also signed the written agreement of January 30, 1920, and the note of the same date which is sued upon and is annexed to plaintiff's petition. Mr. O'Sullivan has reached a different conclusion, but his testimony is lacking in technical detail as compared with the testimony of Prof. Spencer. It deals more with the slant and shading of particular stems than with the characteristics of the writer, and there is an element of halting and of doubt resulting in explanatory reasons, which leave the impression that that certainty which should be the basis of a judicial decree is wanting.

[2] When we consider the testimony of these experts in the light of the admission defendant made at page 67 of the transcript,

it is our opinion that the jury correctly appreciated the facts and that the judgment of the civil district court should be affirmed. The judgment appealed from is therefore affirmed, at appellant's cost.