Paul Balthazar and Elizabeth Bradley Balthazar brought separate actions, under the compensation law, against Swift 
Co., defendant herein, and late employer of William Balthazar, deceased, who was accidentally killed in the course of his employment at Harvey, Louisiana, April 1, 1925. Each claim to be exclusively entitled to compensation, one as the father and the other as the wife of the deceased. The cases were consolidated for convenient disposition below and were so considered on appeal.
The father's claim is based upon subsection 2 of Section 8 of the Compensation Act, Act No. 20 of 1914, as amended by Act No. 216 of 1924, p. 400. In the language of the Act he has a claim, if dependent, only when and "if there be neither widow, widower nor child". The argument is that the wife is not entitled to compensation because she did not live with nor was she dependent upon her husband at the time of his death and that therefore there being no wife entitled to compensation there is, in the intendment of the law, no wife. Opposed to *Page 398 
this contention is the view that the law in saying "no wife" means what it says and not as suggested "no wife entitled to compensation" as counsel would have it. But before considering this point, we must first determine whether the wife is entitled to compensation. A wife is entitled to compensation only when living with, or dependent upon her husband for support at the time of his injury or death. "No compensation shall be payable under this section (Sec. 8 subsection 1) to a widow unless she be living with her deceased husband at the time of the injury and death, or be then actually dependent upon him for support."
Elizabeth Bradley or "Lizzie" as she is frequently styled in the testimony, married the late William Balthazar in the Parish St. Mary. Both were illiterate Negroes and in lieu of their signatures to their marriage certificate affixed their mark. William proved to be inconstant and after a short residence with his bride, left for New Orleans, where for twenty years he led a rather purposeless and aimless existence, sometimes employed and more often otherwise, but ever and always, so far as the record shows, impecunious. Shortly before his death he, for the first time, obtained steady employment, and with the defendant. His wife was not living with him at the time of his death therefore if she has any claim it must rest upon her dependency.
The case on this point rests upon the genuineness of three letters produced and filed by defendant. These letters purport to show plaintiff's dependence upon her husband, because in them he refers to sums of money as being enclosed, and breathes a spirit of love and affection out of all proportion to the circumstances.
The letters, spelling and all, are as follows:
"New Orleans la Mar 15 1925
"Mrs. Elizabeth Balthazar dear wife to day i am ritting to let you heare from me i am well and do Hope (illegible word) reach you Loving Hands will find you (interlineation as follows: i receive your Letter well dear wife i am send you $3 dollars i am expect to Be home Soon excuse my short letter i come to a Close I reame your truly husband Mr. William Balthazar Ancer Soon Harvey La"
"New orleans La Mrs ElizaBeth Balthazar dear wife only a few lines to let you hear from me which i am at Present and do hope this will find you well i rec you Letter dear wife i am sending you $5 dollar in this Letter and i will Send you Some more in a few days dear wife i am Very Busy in work i Say more next time i reamine you truly Hus Band William Balthazar Send my mail to Harvey La Hopein to heare from you Soon"
"New Orleans, La dec 18 1924
"Mrs. ElizaBeth Balthazar my dear Just a few to Let you hear from i am well and do hope you are the Same dear wife i recive your Loving Letter i find me well and i was glad to heare from you But was Sorry to Know you are sick and waryin aBout me Know dear wife dont worry aBout me for i am working i Be (illegible word here) Soon im Sending you 6 dollar dont Be an-easy i will Be home Soon if the Lord Say the (illegible word) i reamain you Truly husBan Mr William Balthazar dont answer i Be home Soon excuse my Short Letter."
Counsel for defendant denounces these letters as forgeries, and, is supported by Mr. L. C. Spencer, a handwriting expert. Mr. Spencer is opposed by Mr. E. A. O'Sullivan, another handwriting expert, who asserts a contrary opinion. It is interesting to note that these gentlemen have differed in the past and that our Supreme Court has indulged in the following comment: "Two experts were called, Prof. L. C. Spencer for the plaintiff and Mr. E. A. O'Sullivan for the defendant. These experts testify at length and explain the reasons for the conclusions they announce. Prof. Spencer is one of the acknowledged experts on handwriting in the South. The scientific study of penmanship has been his life work. He is one of a family of penmen and the Spencerian pen is known throughout the civilized world. In 15 pages of the record he has delivered a thesis on penmanship and pointed out the ease with which a forgery may be detected in a most interesting and instructive manner, and he concludes by staking his reputation as an expert upon the correctness of his finding that the same individual who signed the checks, leases, etc., that the defendant admits he signed, also signed the written agreement * * *. *Page 399 
Mr. O'Sullivan has reached a different conclusion, but his testimony is lacking in technical detail as compared with the testimony of Prof. Spencer. It deals more with the slant and shading of particular stems than with the characteristics of the writer, and there is an element of halting and of doubt resulting in explanatory reasons, which leave the impression that that certainty which should be the basis of a judicial decree is wanting." Burt v. Burt, 160 La. 387, 391,107 So. 234, 235.
During William's long absence Lizzie, unlike Penelope, was the victim of the grand passion on numerous occasions. She is proven to have been very promiscuous and, in fact, may be said to have conferred her sexual favors upon only two classes of Negroes, residents and non-residents of the Parish of St. Mary.
The original cause of William's absence is said to have been one of her early admirers Jules Prevost. William paid few visits to his matrimonial domicile and sometimes had to be assisted in getting bed and board while there. Lizzie claims he continued to provide for her and other witnesses say they saw him in St. Mary with her and one that he could write, and another that he sent a letter at quarterly intervals with money for his wife.
After William's death Lizzie sought out several counsel without apparently disclosing the existence of the letters, which were so vital to her case. This recital is a brief summary of the facts. In a word, Lizzie's case must stand or fall upon the letters we have reproduced. After much deliberation we are convinced that it must fall. We have been persuaded by the following considerations:
Prof. Spencer gives in this case, as in the Burt case, supra, a more plausible reason for his deductions than Mr. O'Sullivan. The surrounding circumstances corroborate his views. The final production of the letters are very likely due to the progressive education her legal experience engenders. Grant v. Grant, 159 La. 535, 105 So. 611. The deceased did not know how to write when he was married, and his career thereafter did not necessitate his acquiring that knowledge, assuming he was capable of doing so, without the spur of necessity. We find it difficult to believe that the deceased, simply as a cultural accomplishment, would have applied himself sufficiently to achieve even such modest literacy skill as was involved in writing these letters. No other letters are produced and in each letter reference is made to money as inclosed or forthcoming, a fact so helpful to the case of the wife. Finally and most convincing to our mind, William who had left Lizzie because of her soft dalliance with Prevost, would hardly have been so loyal and helpful, loving and tender, as the letters would have it, while she beguiled herself with numerous paramours.
Whether Lizzie wrote the letters or not is perhaps doubtful. She, like her husband, could not write when she was married, and may never have acquired the art, but we are convinced that William died in ignorance of their contents, whoever may have written them.
The father's claim, as has been heretofore indicated, depends upon the construction of the law conferring a right of action, pretermitting for the moment the question of dependency. The language is "If there be neither widow, widower nor child, then to the Father or Mother of the deceased employee", etc. Counsel insists that the act means "widow entitled to compensation" and not merely a widow like this one here who is not entitled to anything under the act but simply a widow, in esse. Perhaps the framers of the act may have intended to so qualify the word widow, but, certainly they did not do so. For us to do so would be legislation. Moreover, it is just as probable that a discrimination against the parent was intended for when the right of action given collaterals is treated of the qualifying phrase of counsel is used. Witness the following language of Section 8. "If there be neither widow, widower nor child, nor dependent parent entitled to compensation, then to the brothers and sisters and other members of he family of the deceased employee", etc. (Italics ours).
We may have written the law, as counsel would interpret it, and, we are frank to say, were we to discriminate, the father *Page 400 
would not suffer at our hands, but did not write the statute and cannot rewrite it by interpretation. Nor can the principle of liberal construction, often referred to by our courts, and frequently alluded to by ourselves as applicable to compensation cases, avail here.
The right of action conferred by the Statute is limited and conditioned as the statute directs. No consideration of public policy impels or justifies the extension of the rights conferred or the condition of their exercise. Benjamin v. Standard Accident Insurance Company, 152 La. 874, 94 So. 428.
The Court, a qua, allowed compensation to the wife and dismissed the father's suit. The judgment appealed from in favor of the wife Elizabeth Balthazar is reversed and it is now ordered that there be judgment in favor of the defendant, Swift Co., dismissing her suit at her cost.
The judgment dismissing the suit of the father, Paul Balthazar, is affirmed.
Judgment affirmed in part and reversed in part.