**BRIDGES et al. v. CENTRAL SURETY & INS. CORPORATION et al.**

No. 1810.

Court of Appeal of Louisiana. First Circuit.

April 7, 1938.

Robt. T. Carter, of Greensburg, and Elliott & Elliott, of Amite, for appellants.

Ponder & Ponder, of Amite, and Leslie P. Beard, of New Orleans, for appellees.

LE BLANC, Judge.

Lee Bridges who was employed by the Louisiana Highway Commission, died on December 25, 1935, as a result of injuries sustained by him when he was run over by an automobile on the public highway near Hammond, in the parish of Tangipahoa, during the night of December 23, 1935. Claiming that he met his death by accidental means while in the performance of his duty in the service of his employer, his widow has instituted this suit on her own behalf and that of her five minor children to recover compensation from his said employer and its compensation insurance carrier, Central Surety & Insurance Corporation, at the weekly rate of 65 per cent. of his daily wage of $3, or the sum of $11.70 per week for a period of 300 weeks, and the further sum of $150 for funeral and incidental expenses.

The plaintiff alleges in her petition that among his duties as an employee of the highway commission, her husband was required to attend political meetings and in connection therewith to assist in handling congested traffic after the meeting was over. She avers that on December 22, 1935, he received a specific order from one of his superiors to attend such a meeting which was to be held at Hammond, on the following night, and in obedience to such order he went to Hammond on that night, remained until the meeting was over, and assisted in maintaining order and directing traffic. She alleges further that at about 11 o'clock that night her husband was found mortally wounded on the highway leading west from Hammond, which was the highway he necessarily had to travel on in order to return to his home. She avers also that she is unable to state the facts which immediately contributed to her husband's accidental injury, but on information and belief alleges that he was injured by some person unknown to her while engaged in the performance of the duties required of him.

The defendant Louisiana Highway Commission filed an exception of no cause of action which was overruled by the district judge. It is again urged before this court, but we find that the question raised under the exception is one which is involved in the merits of the controversy and for that reason it will be considered with the other issues raised by the defenses herein presented. Plaintiff then filed a supplemental petition in which she alleged that her husband's injury was the result of "having been set upon or attacked; else run down by an automobile driven by some third person."

In a joint answer filed on behalf of both defendants, it is admitted that prior to December 25, 1935, Lee Bridges was employed by the Louisiana Highway Commission, but denied that he died on that date as a result of injuries sustained in the manner as set out in plaintiff's petition. Defendants specifically deny that the injuries from which his death is alleged to have resulted were sustained while he was in the performance of his service and employment by the Louisiana Highway Commission, and aver that the said injuries, if any, were sustained by him by reason of his willful intention to injure another or others, and by his intoxication at the time of the accident.

On the issues as thus presented, the case went to trial resulting in a judgment in favor of the defendants. Plaintiff's suit was dismissed and her demands rejected, whereupon she took this appeal.

In this court, considerable stress is laid on the fact that the defendants, having presented a special defense, based on two grounds, that is willful intention to injure another or others and intoxication, and this, without pleading in the alternative, they should be restricted to the matters urged in such defense to the exclusion of the other defense made by denial of liability; and as they did not carry the burden which the law imposed on them to support the special defense, judgment should be rendered in favor of the plaintiff as prayed for. In this connection, it is well to remember, as counsel for plaintiff themselves refer to it, that the compensation statute, Act No. 20 of 1914, as amended, is a liberal provision of law in which it is specifically prescribed that courts shall not be bound by the technical rules of evidence or of procedure except those therein provided, and in the light of the jurisprudence which has always recognized this liberality of construction, we do not feel as though it would be proper to disregard a defense urged by a pleader although his pleading may be lacking in some respect as to form. In this case we think that the defendants clearly meant to, and did deny liability on the ground that the accident which produced the death of plaintiff's husband did not occur while he was engaged in the performance of his duties as an employee of the

Louisiana Highway Commission, and then, because of the allegations in plaintiff's supplemental petition, and unable to anticipate what would be proved, they set up the special defense as pleaded. Granted, as counsel contend, that the burden of proof is on them to sustain any special defense, the fact remains that on the main issue presented by plaintiff's allegations and the denial thereof, plaintiff is held to prove to a legal certainty, that the injuries which did cause her husband's death were received by him while he was acting within the scope and course of his employment.

The testimony shows that the deceased was employed in the maintenance division of the highway commission. He was an assistant foreman or the leader of a unit of men who were engaged in maintaining the gravel roads in St. Helena parish in order. What his exact duties were is not plainly shown by the record. Ordinarily, he worked from 6:30 in the morning until 5 o'clock in the afternoon and whether, at times, such for instance as on the night he was injured, his duties required further work of him, is not certain. There is testimony to the effect that men like him were not paid to attend political meetings, but if they did, they were excused from work the following day, with pay. One witness disputes this as being a fact. Plaintiff, however, did produce her husband's immediate superior Mr. Norman Bowers as a witness, who testified that he had given orders for him to attend the meeting at Hammond that night and that the instructions given him were to act in the capacity of a peace officer.

Plaintiff lived at Pine Grove in St. Helena parish which is some 25 miles from Hammond. He went to Hammond on the night of the meeting in his own car. There is no one who testifies that he was seen performing any duties either in maintaining order during the meeting or directing traffic after it was over. If the testimony of a witness named Shelby Newman, also employed by the highway commission, is to be believed, instead of keeping peace, he seems to have been causing a little disturbance himself. That this may well have been so is indicated by other testimony to the effect that after the meeting was over, he requested some of his friends to take him to his car and then that they drive his car out of the traffic.

After his friends left him, he must have driven his car to a night club situated about a mile west of Hammond, known as the Silver Slipper, as that is the place where he was next seen. The manager of the night club testified that he was intoxicated and that he led him out of the club. He returned in a short while, however, and as at that moment Mr. Torrance, the night marshal, was making his rounds, he requested him to take him out. The night officer corroborates the testimony of the club manager and says that he led him out of the place, but that instead of taking him to jail, he put him in his car and told him to stay there until some of his friends would come to get him. The officer states that he was drunk and in no condition to run an automobile.

Instead of remaining in the automobile as he had been told to do by the officer, the deceased walked diagonally across the highway to a filling station some two or three blocks away, and there requested Mr. Loo Lambert to telephone the sheriff to come and get him. He was told that there was no telephone at that station, but that he might find one at Feller's station about a half a mile away. Mr. Lambert says that he then left his place staggering from one side of the road to the other, and in this he is corroborated by Mrs. Lambert, his wife, who also saw him leave.

The unfortunate man evidently realized that he was in no condition to run his automobile as he left it in front of the Silver Slipper night club where it was found following morning, so he continued walking down the highway and was next seen lying down across the north side of the center stripe of the pavement, at a point about a half mile distant from the night club. The proof then is that he was run over by either one or more automobiles and sustained the injuries which later caused his death.

Outside of Mr. Bower's testimony that he had ordered the decedent to attend the political meeting at Hammond and there act in some capacity of peace officer, there is not a scintilla of evidence that he was there in connection with any of his duties for which he was paid as a unit leader in the maintenance department of the Louisiana Highway Commission. The testimony of the officers who served at that meeting in preserving peace and in directing traffic is to the effect that he was not there in any such capacity. But even were it conceded that he was, certainly at the time he was injured, the meeting had long since ended

and he had gone on a venture of his own. All relation with any duties he may have had to perform at the meeting had ceased. We can find no connection whatever with those duties which would have taken him to the Silver Slipper night club a mile away from where the meeting had taken place, and then a half mile further down the highway, on foot, with his car in which he had driven to the meeting still in front of the night club.

 With all the liberality which the compensation statute contemplates in favor of the employee, we find it impossible to extend its provisions to the plaintiff in this case, and are constrained, under the facts presented, to hold that there was no causal connection between the accidental injuries sustained by her deceased husband and the nature of his duties under his employment by the Louisiana Highway Commission. She has failed to make out a case with that legal certainty which the law requires, and as much as her plight is to be deplored, we do not find that we can change the judgment of the lower court which rejected her demand for compensation on behalf of herself and her minor children.

Judgment affirmed.