Annie B. Williams, as tutrix of her illegitimate minor daughter, Dorothy Mae Cyprian, brought this suit under the Workmen's Compensation Laws of Louisiana, Act No. 20 of 1914, as amended, seeking to recover, on behalf of the minor, compensation from Jahncke Service, Inc., as the employer of Jules Cyprian who was killed under circumstances which, it is alleged, rendered the said employer liable to the said minor for compensation for three hundred weeks at the rate of $13 per week.
It is alleged that though the said minor is illegitimate, she is the acknowledged child of her mother, who brings this suit, and the said Cyprian, and that the said child, prior to the death of Cyprian, was living in his household as a member of his family and was dependent upon him.
Though the death is alleged to have occurred on March 21, 1936, the suit was not filed until November 7, 1946. Petitioner alleges that the reason for this delay was the fact that until she was appointed tutrix in November, 1946, no other person had been appointed as personal representative of the minor.
The defendant filed a plea of prescription of one year and an exception of no cause of action and no right of action. The plea of prescription was abandoned by defendant. The other exceptions were referred to the merits and the defendant filed answer. It admitted the employment of Cyprian and that he was killed on March 21, 1936. It denied that prior to his death he had been earning the amount alleged by plaintiff. It denied that the minor had been acknowledged by Cyprian and it also denied that the said minor had been a member of the family of Cyprian or had been dependent upon him; it averred that at the time of his death, Cyprian was legally married to another woman, Stella Brown Cyprian, and that his said wife had been living with him and had been dependent upon him up to the time of his death.
Defendant averred also that the said legal wife "would have the primary legal right to such compensation * * * to the exclusion of all other persons except legitimate children * * *." It *Page 402 
averred also that, in a compromise judgment, which had been rendered in the matter entitled Stella Cyprian vs. Jahncke Service, Inc., No. 219,911, of the docket of the Civil District Court for the Parish of Orleans, the said Stella Cyprian had been awarded compensation and that this award had been paid by the said defendant.
As an alternative defense, the defendant averred that Cyprian's death resulted from injuries received as a result of "his wilful intention to injure another and/or * * * intoxication at the time of the injury and/or * * * deliberate breach of statutory regulation affecting safety of life or limb."
After a trial there was judgment dismissing the suit, the judge a quo having reached the conclusion that Cyprian was killed as a result of his "deliberate intention to injure another." From this judgment plaintiff has prosecuted this appeal.
It is evident that the abandonment by defendant of the plea of prescription of one year resulted from a realization of the effect of section 16 of the statute, Act No. 20 of 1914, as amended, Act No. 38 of 1918, § 1, for in that section it is provided that "* * * no limitation of time, in this act provided for, shall run, so long as such incompetent or minor has no curator or tutor as the case may be."
See Wells v. White-Grandin Lumber Co., 13 La. App. 696, 129 So. 171.
An interesting question is raised by the exception of no right of action. It will be noted that by the allegations of the petition it is sought to base the claim of the minor on either or both of two theories. The first is that although the minor is an illegitimate child, she was duly acknowledged by the mother and the father when they registered her birth — an alleged fact which is disputed by the defendant, — and the second is that even if the claim cannot be based on the fact that the child, though illegitimate, was acknowledged by the parents, including the father, still the minor may base her claim on the fact that she resided in the household of the deceased employee and was supported by him and depended upon him, and was, therefore, a dependent member of his family.
In contending that the minor has no right of action, the defendant maintains that as to the claim based on blood relationship and the acknowledgment of the illegitimate child, there can be no such claim for the reason that for a child to make such a claim there must be either a full legitimacy of the child or an acknowledgment in one of the methods required by Article 203 of our Civil Code. And as to the assertion that the claim may be based on the alleged fact that the minor was a member of the decedent's family, defendant declares that there can be no such claim for two reasons: First, that where a child claims not as a blood descendant but solely as a dependent member of the family, that child must be one who could have been acknowledged by the deceased employee; and second, that where a person makes claim as a member of the family, the claimant must allege and show that there is no other claimant whose prior or superior right would stand in the way of a claim of a member of the family.
Defendant maintains that in spite of the allegation that the minor was acknowledged by both the father and the mother, — even if it were true — there could be no claim based on this acknowledgment because the true fact is that the minor could not have been acknowledged because of the effect of Article 204 of our Code, which provides that the acknowledgments recognized in Article 203 "shall not be made in favor of children whose parents were incapable of contracting marriage at the time of conception."
The facts as shown by the record are: (1) that there was no acknowledgment by the father when the birth was registered, the certificate evidencing the registry of the birth merely showing that the mother appeared and made the statement concerning the paternity of the child; and (2) that at the time the decedent was the lawful husband of Stella Brown Cyprian and therefore, he and the mother were "incapable of contracting marriage * * *."
Defendant, pointing to these facts, asserts that the claim of the minor obviously cannot be based on the fact that she is a "child" of the decedent. That an *Page 403 
illegitimate unacknowledged child has no claim as a "child" is made clear by a mere reading of the statute.
In section 8, paragraph 2, subsection (H) of the statute, as amended by Act No. 242 of 1928 p. 360, it is provided: "(H). The term 'child' or 'children' shall cover only legitimate children, step-children, posthumous children, adopted children and illegitimate children acknowledged under the provisions of Civil Code Article[s] 203, 204 and 205. The term 'brother' and 'sister' shall include stepbrothers and stepsisters, and brothers and sisters by adoption."
See Lunkin v. Triangle Farms, Inc., La. App., 24 So.2d 213. Therefore, says defendant, the minor's only claim rests upon a determination of whether or not she was a dependent member of the family. And defendant maintains that even if she was a dependent member of the family, there can be no claim even on this basis until it is made to appear that there is no one in a superior group whose right would stand in the way of the claim of a member of the family; and defendant makes the further contention that because the child is not only illegitimate, but is adulterous, she is not a person who could be recognized as a member of the family of the decedent.
That a dependent member of the family may, in certain instances, claim compensation is shown in Thompson v. Vestal Lumber Mfg. Co., 208 La. 83, 22 So.2d 842, 852, in which, on rehearing, the Supreme Court said:
"* * * The other class of survivors who are entitled to compensation for an injury causing the death of an employee consists of those who were actually dependent upon his earnings and who were either members of his family or bore to him one of the several relations enumerated in paragraph (D)."
We find nothing in that opinion, nor in the statute, which makes the right of one who claims as a member of the family to depend to any extent whatever on blood relationship or legitimacy. It is evident that the Supreme Court in that decision indicates that it found no such limitation of that right, and a very plain limitation would result if we should adopt defendant's theory that there can be no claim as a member of the family if the person making the claim happens to be an adulterous child of the deceased employee. Nor do we find anything in the opinion of the Supreme Court in Archibald v. Employers' Liability Assurance Corporation, 202 La. 89,11 So.2d 492, which to any extent at all indicates or intimates that legitimacy or illegitimacy in any of the various grades, if there be grades of illegitimacy, may be taken into consideration in determining whether a person may claim as a member of the family.
Since the claim under that provision does not depend in any way or to any extent upon legitimacy, it becomes apparent that any person otherwise qualified under the statute may make claim as a member of the family of the decedent.
But the defendant raises the further contention that even if such claimant may be permitted to assert a right, that right must depend for its existence on the absence of any other claimant with a superior right, and defendant shows that there was a legal wife in existence and that that wife made claim and that that claim was compromised. Defendant argues, therefore, that since there was a superior claim which was successfully asserted by the superior claimant, there can be no claim by the minor as a mere member of the family. This contention makes it necessary that we consider the very interesting question which was propounded in the case of Bradley v. Swift Co. (Balthazar v. Swift Co.), 167 La. 249, 119 So. 37, certain phases of which are also to be found reported in 10 La. App. 25, 119 So. 906, and in an opinion rendered by us on February 20, 1928,38 So.2d 397.
The statute provides for three different groups of dependents and makes the rights of those in the second, or in the third group, dependent upon whether or not there is in existence a claimant in one of the superior groups. Those groups are: (1) widows and children — (widowers in some instances); (2) dependent fathers and mothers; and (3) brothers and sisters or other members of the family. The right of the second group — mothers and fathers — comes into existence only "if there be neither widow, widower nor child * * * " *Page 404 
and the right of the third group, that is, brothers and sisters and other members of the family, comes into existence only "if there be neither widow, widower nor child, nor dependent parent entitled to compensation * * *." Act No. 242 of 1928, p. 359, § 8, subd. 2(E). As the Court of Appeal for the First Circuit said in Lunkin v. Triangle Farms, Inc., supra [24 So.2d 215]: "* * * the statute means that if there is no widow, widower, child, parent or brother or sister entitled to claim compensation, then 'other dependents' have the right to claim it. * * *"
Now since the claim of the minor in the case at bar can be based only on the fact that she is a member of the family and not on the fact that she is a child of the employee, it is evident that her claim depends upon whether or not there is any superior claimant, and it is shown that there is a legal widow, Stella Brown Cyprian. It is shown, also, that Stella Brown Cyprian made a claim and that payment has been made to her under compromise judgment which was rendered.
The plaintiff protests that that settlement can have no effect as standing in the way of the claim of the minor for the reason, asserts plaintiff, that as a matter of actual fact the legal widow, Stella Brown Cyprian, was not living with, nor dependent upon, the employee at the time of his death. The argument is that in order that a legal widow stand in the way of a member of the family, or in the way of any one else in a subordinate group, the widow must be one who has a right to recover in compensation and that is exactly what was held in Balthazar v. Swift Co., supra [167 La. 249, 119 So. 39]. There the Supreme Court was faced with the problem of determining whether the mere existence of a widow who, because she did not depend upon nor live with the decedent, could not herself recover, would stand in the way of a claim by a dependent father. The Court held that the mere existence of a widow was not sufficient and that unless she was "entitled to compensation", she did not prevent the father, otherwise qualified, from making a claim for compensation. But defendant says that since the widow in this case brought suit and claimed compensation asserting that she had been dependent upon the decedent and had been living with him, and since it made payment to her in the suit in which she made that claim, that settlement may be relied upon as a bar to the present suit, regardless of whether or not the widow would have been successful had it been necessary to prosecute the suit to final conclusion. We do not agree with this argument of defendant, and we think that if defendant wishes to rely upon the claim of the widow as barring the claim of the member of the family it may do so only if the widow was actually entitled to compensation.
The issue which is presented by the principal defense is one of fact. Did the death of Cyprian result from either his own intoxication or his wilful intention to injure another? A determination of this factual issue depends almost entirely upon whether there should be admitted in evidence the testimony of Frank Grote who, at the time of the death of Cyprian, was a night watchman of defendant and who had died before this case was tried, but who had testified in an earlier case in which the present plaintiff, Annie B. Williams, who was then Annie Powell, had sued Victory Industrial Life Insurance Company on a policy of insurance on the life of Cyprian. As to the occurrences which led up to the death of Cyprian, there is little evidence except that of Grote, given in that earlier case.
It is, therefore, of transcendent importance that we carefully consider the legal questions which were presented when this testimony was offered in evidence in this case and that offer was objected to by counsel for plaintiff.
In that earlier case in the First City Court, Annie Powell, in her own behalf, was plaintiff. She is admittedly the same person who, as tutrix of the minor, is plaintiff in the case at bar. In that case she was the beneficiary named in a policy of insurance which had been issued by the insurance company. The company had denied liability on the alleged ground that Cyprian was killed "while violating the law", and that, therefore, there was no liability since the policy contained a provision to the effect that "death benefits * * * will not be paid * * * for *Page 405 
death resulting from violation of law, * * * alcoholism * * *."
In the First City Court in that earlier suit that defense had prevailed and the suit had been dismissed. When, in the case at bar, counsel for defendant sought to introduce the record in that earlier suit, and particularly the testimony of Grote, he made the following statement: "In connection with the testimony of the witness I offer in evidence the entire record of Annie Powell versus Victory Industrial Life Insurance Company, Number 245103 on the docket of the First City Court, and the testimony of the witnesses taken in said case, and particularly the testimony of F. J. Grote, pages 4 to 18, as a defendant's witness, as contained in said record, as certified by the stenographer of said court; it now having been shown that the witness Frank Grote is dead, and we are unable to produce him for examination."
Whereupon counsel for plaintiff made the following objection: "I object, except with reference to the testimony of Annie Powell and Lester L. Polk, which may be admissible only for the purpose of contradicting or attacking the credibility of these witnesses."
Earlier in the trial counsel for defendant, in an effort to contradict certain testimony given by plaintiff, had offered that other record in evidence, and counsel for plaintiff had said: "* * * I object to the entire record. If he intends to contradict the witness's testimony by the previous testimony, that may be admissible."
Counsel for plaintiff now argues that that earlier testimony of Grote is inadmissible for two reasons: First, he says that it was offered in a case between other parties and in which a different issue was presented, and second, he says that it is inadmissible because the allegations of the answer, which defendant seeks to prove by this testimony, are so vague as not to be susceptible of proof. In connection with this second contention counsel says that all that is alleged in the answer is that the injury and death of Cyprian were caused by his wilful intention to injure another or by his intoxication, and that since no details are alleged, those charges are vague and proof in support of them should not be admitted even if that proof were otherwise admissible.
We think that objection is not well founded. In the first place, the objection to the introduction of the testimony of Grote made no reference whatever to the vagueness of the allegations of the answer. The objection itself was of the very vaguest kind, and counsel set forth no reason from which it could be deduced just what he had in mind. In the second place, the allegations of the answer were sufficiently specific to put plaintiff on notice as to what the defendant intended to prove. Plaintiff had charged that in a particular place and at a particular time Cyprian had been shot by an employee of defendant, and defendant had answered that while that did occur, it had resulted from Cyprian's deliberate attempt to injure another or from his intoxication. We see no reason to say that such a charge was so vague that it did not put plaintiff on notice as to what defendant intended to prove.
In Bridges v. Central Surety Insurance Corporation, 180 So. 456, 457, the Court of Appeal for the First Circuit said: "* * * it is well to remember, as counsel for plaintiff themselves refer to it, that the compensation statute, Act No. 20 of 1914, as amended, is a liberal provision of law in which it is specifically prescribed that courts shall not be bound by the technical rules of evidence or of procedure except those therein provided, and in the light of the jurisprudence which has always recognized this liberality of construction, we do not feel as though it would be proper to disregard a defense urged by a pleader although his pleading may be lacking in some respect as to form. * * *"
The objection that the testimony is not admissible because it was given in another case presenting a different issue and between different parties is not so easily disposed of. Counsel for plaintiff attempts to persuade us that the issue which was presented to the court in the earlier case was substantially different from that which is before us. He says the issue was whether there was a violation of law, whereas the issue here is whether Cyprian was attempting *Page 406 
to do harm to some one else. He says that in the earlier case the violation of law might have been the charge that Cyprian had no right to be in the place in which he was killed and that since, in the case at bar, there is practically no dispute over his right to be where he was, the issues are different. We do not see the distinction. It is plain that in the earlier record the principal issue was whether or not Cyprian attacked or threatened to attack Grote. That was the violation of law which was there charged. Here the main issue is the same. Did Cyprian attack or threaten to attack Grote?
In the earlier case there may have been other incidental questions, just as there are here, but that was the all important question in both cases — did Cyprian attempt to injure or threaten to injure Grote? That in the one his effort was called a violation of law, whereas in the other it is called an attempt to injure another is of no importance.
Counsel says that even if we find the issue substantially the same, nevertheless we must find that the parties are different in the two cases. It is no doubt true that the defendants are different. In the one, the defendant sued a life insurance company, whereas in the other the defendant is Jahncke Service, Inc., an entirely different corporation. But the identity of the defendant is of no importance. The important thing is the similarity of interest of the parties against whom the evidence is to be used. Counsel for plaintiff says that while Annie Brown Williams, who as tutrix, is plaintiff here, is the same person who, as Annie Powell, was plaintiff in the earlier case, she is acting in the one case in a different capacity from that in which she appeared in the other. This is true, but it is also true that the same person in whose behalf counsel had the right to cross-examine in the one suit is the person whose attorney would have had the right to cross-examine had the same witness been produced in this case.
We have discussed these two questions — one, diversity of parties, and the other, identity as to issues, before calling attention to the various decisions on the subject and the views of the various textwriters, because we believe that those views and those decisions will be the more easily understood after a discussion of the facts which make them applicable.
The exclusion of such testimony in some instances results from an application of what is known as the Hearsay Rule, the purpose of which is stated by Mr. Wigmore in his work on Evidence, Third Edition, Volume 5, Sec. 1362, p. 3, as follows: "* * * the Hearsay rule, as accepted in our law, signifies a rule rejecting assertions, offered testimonially which have not been in some way subjected to the test of Cross-examination:"
The writer says that while, as a general rule, the parties to the litigation in which the testimony was first given must be the same as in the litigation in which it is later offered:
"* * * this limitation suffers in practice many modifications; and properly so, for it is not a strict and necessary deduction from the principle. At first sight, indeed, it seems fair enough to argue even that a person against whom former testimony is now offered should have to be satisfied with such cross-examination as any other person whatever, in another suit, may have chosen to employ. And it is entirely settled that in some such cases he must be satisfied, namely, in cases where the other person was a privy in interest with the present party. The reason for such cases is that there the interest to sift the testimony thoroughly was the same for the other person as for the present person. The principle, then, is that where the interest of the person was calculated to induce equally as thorough a testing by cross-examination, then the present opponent has had adequate protection for the same end. Thus, the requirement of identity of parties is after all only an incident or corollary of the requirement as to identity of issue.
"It ought, then, to be sufficient to inquire whether the former testimony was given upon such an issue that the party-opponent in that case had the same interest and motive in his cross-examination that the present opponent has, * * *." (Sec. 1388, p. 95) *Page 407 
We conclude our presentation of the view of Mr. Wigmore with a quotation from his work: "* * * The situation is one that calls for common sense and liberality in the application of the rule, and not a narrow and pedantic illiberality. * * *" (Sec. 1387, p. 84)
Mr. Jones, in his work on Evidence, Fourth Edition, Volume I, Secs. 339, 340, pages 620, 621, expresses very much the same view and states that:
"If the parties and issues are the same in each case, it is not necessary to the admission of the testimony that the form of the later proceeding should be the same as that of the earlier." (Sec. 339)
"The ground upon which evidence given by a witness who has since died or otherwise become unavailable may be read in evidence at a subsequent trial is that it was taken in an action or proceeding where the parties against whom it is offered, or their privies, had an opportunity to cross-examine the witness as to the proffered statement." (Sec. 340)
On the question of whether the issue must be identical, or may be only similar in the two cases in order that evidence taken in the one may be offered in the other, we find the following in American Jurisprudence, under the subject of Evidence, Volume 20, Sec. 691, pp. 584, 585: "* * * In the few cases in which the courts appear to have given thought to the matter, the criterion of admissibility is the existence in both actions of those issues to which the disputed evidence relates, rather than the mere identity of issues in all phases of the proceedings. So long as those particular issues to which the evidence relates are present in both actions, it is hard to see why issues foreign to such evidence should prevent its admission. It clearly is not necessary that the form of the latter proceeding should be the same as that of the earlier one. In other words, if the point in issue touched by the former testimony is the same, it is immaterial that the issues framed by the pleadings are not precisely the same."
There is a discussion of this question in the Model Code of Evidence of the American Law Institute under Rule 511, p. 261. There we find the following: "* * * There is a growing tendency to admit the testimony if the issue upon which it was received at the former trial is substantially the same as that upon which it is offered at the later trial, and the party against whom it is offered was a party at the earlier trial and if the witness is unavailable. The Rule abolishes all these limitations and makes the former testimony admissible, wherever relevant, regardless of the identity of the party or issue * * *."
And Mr. Greenleaf, in his treatise on Evidence, at page 589, says: " 'With respect to depositions, complete mutuality or identity of all the parties is not required. It is generally sufficient, if the matters in issue were the same in both cases, and the party against whom the deposition is offered had full power to cross-examine the witness.' "
That there is much in the jurisprudence of Louisiana which indicates that our own courts have followed these views is evident from a reading of certain decisions to which we shall now refer and from which we shall quote.
In Rouyer v. Carroll, 47 La. Ann. 768, 17 So. 292, 293, the Supreme Court said:
"The general rule, of ancient origin, is that in case a witness has died, or 'departed the realm,' since his testimony was taken in some prior judicial proceeding, it may be introduced in evidence in a subsequent proceeding between the same parties.
" 'Testimony of a witness in a previous suit between the same parties, for the same cause of action, where there has been an opportunity for cross-examination, may be used by either party, if the witness be dead or absent, or, for other cause, cannot be produced.' Hennen v. Monro, 4 Mart., N.S., 449; Miller v. Russell, 7 Mart.,N.S., [266], 267; Noble v. Martin, 7 Mart.,N.S., [282], 283; Williams v. Bethany, 1 La. [315], 320; Lopez['s Widow and Heirs] v. Berghel, 15 La. [42], 43; Conway v. Erwin, 1 La. Ann. 391; 1 Hennen's Digest, p. 506, § 11, subsec. 2.
" 'Complete mutuality or identity of all the parties is not necessary to admit testimony in a former suit. It generally suffices if the issue be the same, and the party *Page 408 
against whom it is offered had full power of cross-examination.' Clossman v. Barbancey, 7 Rob.(La.) 438; [Union] Bank v. Jones, 4 La. Ann. 220, 221; Taylor v. Paterson, 9 La. Ann. 251; Code Prac. art. 440."
The Court of Appeal for the Second Circuit, in Young v. Reed, 192 So. 780, repeated the identical language concerning the fact that it is not necessary that there be absolute identity of all parties provided there was full right of cross-examination.
Counsel for plaintiff in contending that the testimony of Grote in the earlier case should not be admitted, cite several cases, particularly Mathes v. Gaines, 19 La. App. 692, 127 So. 408, and Succession of Derigny, 128 La. 853, 55 So. 552. However, we think that these two cases may be distinguished.
In Mathes v. Gaines, supra [19 La. App. 692, 127 So. 409], this Court did make the statement that: "* * * 'evidence taken in a former case can be offered as evidence only in a suit between the same parties and even then only when the witnesses are not available themselves. In other words, the evidence produced at one trial is secondary evidence if the witnesses themselves are available to testify at the second trial.' "
But it appeared there that the witnesses who had testified in the earlier case were available and could have been produced in the later case.
In Joseph Fuentes v. Myra Clark Gaines, 25 La. Ann. 85, our Supreme Court quoted with approval from Mr. Greenleaf as follows: "* * * 'And though the two trials were not between the same parties, yet, if the second trial is between those who represent the parties to the first, by privity in blood, in law, or in estate, the evidence is admissible. * * * ' "
In Succession of Derigny, supra, [128 La. 853, 55 So. 553] it was sought to introduce what is known in France as an "acte de notoriété", and the Supreme Court held that that act was properly excluded since it consisted merely of the statements of persons "taken in a manner not authorized by our law for the taking of testimony." In other words, the witnesses were not subjected to cross-examination.
We agree with counsel for defendant who state in their brief that the District Court (D. New Jersey) in Mid-City Bank 
Trust Co. v. Reading Co., D.C., 3 F.R.D. 320, 322, has given an able exposition on this subject. "The rules of evidence were designed to obtain the truth. They are intended to exclude testimony that is unreliable, such as hearsay, and testimony that is false and dishonest. The safeguards set up to combat testimony of this character are the oath and the right of the adverse party to cross-examine the witness. The omission of either of these tests of testimony will usually render the testimony objectionable. With these reasons for the rules of evidence in mind let us inquire into the basis for the ruling that testimony or depositions given in a former action are not admissible in a later action, even though such testimony or depositions have been taken under oath and have been subject to the right of cross-examination by the adverse party, where the parties or the issues involved were not the same in both actions. The restrictions which have been set up to the effect that the later action must be substantially between the same parties or their privies and must involve the same issues as in the former action clearly reflect the reason behind them, i.e., if the interests of the parties were different or if the issues involved in the two actions were not identical, the right of the adverse party to cross-examine in the later suit would be impaired. There is little difficulty in understanding that different issues would impair the right of cross-examination. There is considerable difficulty in understanding how that right would necessarily be impaired in all circumstances where the parties involved were not identical. This difficulty has been generally recognized in the cases cited which have upheld the admissibility of such testimony where the parties in the two actions were not identical but were substantially the same. The existence of privity between the two parties is the test used by many courts to find substantial identity, but varied and conflicting interpretations as to what constitutes privity have been made. In this conflict several courts have overlooked the requirement which is basic to the field of admissibility *Page 409 
of evidence, namely, the right of the adverse party to cross-examine. Some courts attempt to define the term, 'privity', for the purpose of its applicability to cases of this nature, by strictly construing the term to its use in the field of property law, as denoting mutual or successive relationships to the same rights of property. Such a construction fails to give effect to the purpose of the rules of evidence. Other courts have discussed privity in terms of identity of interest. [Young v. Reed, supra.] It is this view that considers the practical reason behind the objectionable nature of testimony given during a former action and offered in a later action where the parties are not substantially identical. The interest of the parties in the litigation determines the method and manner of the cross-examination. The similarity of the interest of each of the parties is closely associated with the question as to whether the issues involved in each of the two actions are identical. * * *" (Brackets ours.)
It should be borne in mind that the decisions from which we have quoted and the views of the various textwriters were based on cases which did not involve statutes requiring the relaxation of the rules of evidence. By the statute under which this suit is filed it is required that: "* * * The Judge shall not be bound by technical rules of evidence or by technical rules or (of) procedure other than as herein provided, * * *." Section 18, par. 1(C) 4, as amended, Act No. 85 of 1926, § 1.
Mr. Horovitz, in his work, Injury and Death under Workmen's. Compensation Laws, at pages 239 and 240, refers to the fact that the statutes of many states require that the rules of evidence be relaxed in the trial of compensation cases. He says that this is due to the fact that it is hard for the ordinary layman, the ordinary worker, to understand why, for technical reasons, certain evidence should be excluded and that, therefore, in compensation cases these rules which would exclude certain testimony are not to be strictly applied. Mr. Horovitz says that this relaxation results from the fact that it is necessary to "win their confidence" and he adds: "Nor could workers be made to feel that they had a fair trial if the administrators were to be bound rigidly by the doctrines of hearsay, res gestae, private conversations, and the dozens of other common-law rules invented in the last century to satisfy a court's conscience, or to keep juries from being misled, or to keep out self-serving statements, or whatever the reason."
As a result of his study of the various decisions, Mr. Horovitz says: "Hearsay was not only admitted in evidence, but was held to be 'legal evidence, and may be sufficient in itself to sustain an award.' "
Of course, it must be true that if the rules are to be relaxed in favor of the worker they must also be equally relaxed in favor of the defendant employer.
For this additional reason we feel that, since this is a case brought under the compensation statute, the ends of justice require that we admit and consider the testimony of the witness Grote.
He was the night watchman of the Jahncke Company. He said that on that night and at that time, so far as he knew, Cyprian had no business in the yard. He stated that before he "made" his "round" he locked the gate "so they couldn't come in," and that, therefore, he didn't know how Cyprian had entered the yard. It must be said, however, that there is other evidence which tends to show that Cyprian had obtained the key by which he had gained entrance and that he was there on company business. Whether he actually was there on company business and whether he had actually obtained a key, we do not find it necessary to decide. Grote goes on to say that believing that no one had any right to be where he found Cyprian, he was surprised to see "a man on his hands and knees trying to get up," and that he then recognized this man as Cyprian. He asked Cyprian how he had entered the yard and Cyprian answered: "To Hell with you." Grote then said: "He was drunk and he began to curse and abuse me and I pulled my revolver and ordered him out, and he said: 'If I find a stick or something I'll knock your head off! He was eleven steps from the door and he circled forty feet around and I didn't move but four *Page 410 
feet. He was coming closer to me, and finally he couldn't find a stick so he decided to take my revolver from me * * * and he was advancing on me and I pulled the trigger and it snapped, and I told him to come no further, and he advanced his steps, and at that time he was within four feet of me and I fired."
If these were the facts, we have no doubt that Cyprian's death resulted from his threats and his threatening attitude. Grote was not required to wait for an actual physical attack before doing all that he could to defend himself.
Counsel for plaintiff contends that even if Grote's statement sets forth the true facts, nevertheless there should be a recovery by the dependents of Cyprian because of the fact that the killing grew out of company business. In other words, he argues that no matter who is the aggressor in such a situation — no matter what the cause of the death — if the dispute which originated the controversy grows out of company business, then there can always be recovery by the dependents of the deceased employee. And counsel cites as authority for this proposition Guderian v. Sterling Sugar Railway Co., Ltd.,151 La. 59, 91 So. 546, 548. There the Court said:
"When a foreman, in the performance of his duty, is assaulted by a laborer under him, and is injured as a consequence, the injury is considered as caused by an accident within the meaning of Employers Liability Acts of the same general nature as ours. McNichol's Case, 215 Mass. 497, 102 N.E. 697, L.R.A. 1916A, 306, and annotations thereto; Western Indemnity Co. v. Pillsbury, 170 Cal. 686, 151 P. 398; Cranney's Case,232 Mass. 149, 122 N.E. 266, 15 A.L.R. 584. We think the above rule is applicable under our statute, and ours was interpreted accordingly in a dictum in Nash v. Longville Lumber Co.,148 La. 943, 88 So. 226.
"The above rule also applies if, as in this case, the foreman is assaulted and injured immediately after the discharge when the assault is caused by the discharge, and when the foreman, as in this case, pursuant to his duty, is in the act of settling with the laborer."
From the statement of the facts which appears in that opinion, it seems that the foreman probably struck the first blow, and from this, counsel argues that since the Supreme Court allowed recovery for the injuries that the foreman sustained, it is obvious that it makes no difference who is the aggressor if the controversy grows out of company business. We cannot agree to this.
If a foreman, in attempting to enforce company rules or regulations or to carry out company business, sustains injury because, in a controversy, he happens to strike the first blow, it can properly be said that he was merely attempting to do his duty when, by chance, he found it necessary to strike the first blow. We do not think the rule works the other way round. If a subordinate employee gets into a controversy over company business and initiates an attack upon a foreman or a superior, surely it cannot be said that because the dispute grows out of company business, there can be recovery regardless of the fact that the employee was the assaultor.
When we come to consider the question of whether Cyprian was intoxicated at the time and whether, therefore, his death can be said to have resulted from his intoxication, we do not find it necessary to decide that the evidence justifies the conclusion that he was intoxicated. Grote says he was "drunk", and there is other evidence to the effect that he had been seen drunk on other occasions, and that "he was a bad man when he was drunk". Whether he was actually intoxicated at the time is of no importance since we have found that regardless of his condition he was the aggressor. Recovery must be denied on that ground.
Our conclusion is that the district judge was correct in finding that the death of Cyprian resulted from his wilful attempt to injure another.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed. *Page 411